[No. 9778. Department One.—August 1, 1885.]

# HENRY JUNKANS, APPELLANT, *v.* JOHN BERGIN ET AL., RESPONDENTS.

WATER RIGHTS—APPROPRIATION.—A subsequent appropriator of water from a natural stream has no right to destroy the ditch of a prior appropriator, or to materially diminish the quantity or deteriorate the quality of the water to which the latter is entitled.

ID.—POINT OF DIVERSION MAY BE CHANGED.—One entitled to divert a quantity of water from a stream may take it at any point on the stream, and may change the joint of diversion at pleasure, if the rights of other appropriators be not injuriously affected by the change.

ID.—FINDING—EVIDENCE.—On a review of the evidence, *held*, that a finding of the court below as to the carrying capacity of the ditch of the plaintiff, and the amount of water to which he was entitled by appropriation, was justified, and that the defendants had diverted a portion of the water to which the plaintiff had a prior right.

APPEAL from a judgment of the Superior Court of Trinity County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. W. Philbrook,* and *Hatch & Chadbourne,* for Appellant.

*W. J. Tinnin,* and *John C. Burch,* for Respondents.

BELCHER, C. C.—This is an action to recover damages for the diversion of water, and for an injunction.

The case was tried by the court, and judgment rendered in favor of the defendants.

The plaintiff then moved for a new trial, which was denied, and the appeal is from the judgment and from the order denying the new trial.

It appears that the plaintiff owned two ditches in Trinity County, one known as the Perkins Bar Ditch, and the other as the Evans Bar Ditch, which took water from Perkins Creek and conducted it to Perkins Bar on the Trinity River, where it was used for mining. Perkins Creek had a tributary known as Maple Creek,. and the defendants had two ditches, one known as the Hop Lee Ditch and the other as the Fronte Ditch, which took water from Perkins Creek and conducted it to a point on Maple Creek, where it was used by them in mining.

The Perkins Bar Ditch had the oldest water right, and took its water from Perkins Creek, about half a mile above the mouth

of Maple Creek. The Evans Bar Ditch had the next oldest water right, and up to 1882 took its water from Perkins Creek, just below the mouth of Maple Creek. In that year, the dam which turned the water into the ditch was so filled up with tailings, which the defendants, by their mining operations on Maple Creek caused to flow down that creek, that it became very difficult and expensive to maintain it so as to keep the water flowing into the ditch, and the plaintiff then moved his dam up Perkins Creek to a point about fifty feet above the mouth of Maple Creek.

The defendants' ditches were constructed after the plaintiff's ditches, and took water from Perkins Creek above the head of the Perkins Bar Ditch. The defendants and their grantors had been using their ditches to conduct water from Perkins Creek to their mines on Maple Creek since 1877, till they were stopped from so doing by the temporary injunction issued in this case.

1. The court found the capacity of the Perkins Bar Ditch to be $247\frac{1}{2}$ inches of water, delivered under a five-inch pressure, and that as appurtenant to that ditch the plaintiff had the first right to take that quantity of water from the creek.

The appellant claims that the quantity of water allowed for his, Perkins Bar Ditch, is too small, and that the finding limiting it to the quantity named is not supported by the evidence.

. It is not easy to see just how the court found the exact figures named, but we think there was a substantial conflict of the evidence upon the subject. The complaint alleges the capacity of the ditch to be 300 inches under a four-inch pressure. The plaintiff testified that its capacity was from 300 to 400 inches, without naming the pressure. One of his witnesses, who was a civil engineer, testified that he measured it on the 28th of February, 1884, and that the capacity of the ditch when "as full as it could carry," was 360 inches under a four-inch pressure.

For the defense, the respondent Bergin testified that the ditch was enlarged in its capacity one third in the fall of 1882, and that he first learned its capacity in 1880, and would judge it to be from 150 to 160 inches. Another witness for the defense testified that the ditch was enlarged in 1882 so that it would probably carry 100 or 125 inches more than it would when he first knew it in 1881, and that when he first knew it, its capacity

was from 150 to 200 inches, though he never measured it exactly.

There is no denial on the part of the plaintiff that the ditch was enlarged in 1882, and looking at all the testimony upon the subject it would seem that the finding was quite as favorable to the plaintiff as he was entitled to have it.

2. The court found that in 1882 the Evans Bar Dam was destroyed by tailings sent down by the mining operations of the defendants, and the plaintiff in that year removed his dam, or rather constructed a dam in place thereof on Perkins Creek, about fifty feet above the mouth of Maple Creek, and diverted water therefrom into his Evans Bar Ditch; and as a conclusion of law, that the plaintiff by permitting the defendants to destroy his dam on Perkins Creek, below the mouth of Maple Creek, known as the Evans Bar Dam, and by erecting in place thereof a new dam on Perkins Creek, above the mouth of Maple Creek, lost his prior rights as against the defendants to the water of Perkins Creek, which he had acquired by the construction of the Evans Bar dam and ditch.

The appellant claims this finding and conclusion to be against law.

The appellant's ditch had capacity to carry 700 inches of water, delivered under a five-inch pressure. Up to 1882, its head dam being below the mouth of Maple Creek, it took the waters of both creeks. To the extent of its capacity the appellant, being the first appropriator, had the right to have all those waters flow into his ditch. But subject to that right the respondents might lawfully divert the water from Perkins Creek and use it on Maple Creek. (*Union Water Co.* v. *Crary*, 25 Cal. 504.) This they had been doing for several years, and it is not alleged that its quantity was diminished, or its quality deteriorated. They had no right, however, by their mining operations, to destroy or to fill up the appellant's dam or ditch, or to materially diminish the quantity or deteriorate the quality of the water, and if they did that, an action might have been maintained against them for damages and to restrain their works. (*Hill* v. *King*, 8 Cal. 336; *Hill* v. *Smith*, 27 Cal. 476.)

Instead of resorting to such an action the appellant moved his dam to a point above the mouth of Maple Creek where it

was impossible to divert the waters flowing down that creek into his ditch, and now seeks to restrain the respondents from diverting water from Perkins Creek, and damages for past diversions. Undoubtedly one entitled to divert a quantity of water from a stream may take the same at any point on the stream and may change the point of diversion at pleasure, if the rights of others be not injuriously affected by the change. (*Kidd* v. *Laird*, 15 Cal. 161.)

Here the rights of the respondents might be injuriously affected by the change if this action could be maintained. We think the appellant has mistaken his cause of action, and that the findings in this respect are not obnoxious to the objections urged.

3. The court found that "defendants have at all times respected the prior rights of plaintiff to the 247½ inches of the first flow of the waters of Perkins Creek, and have not, nor has either of them, at any time, deprived the plaintiff or his said ditch of any portion of said 247½ inches of water to which he had a prior right, nor have they or either of them in anywise interfered with or trespassed upon said plaintiff's prior right to said 247½ inches aforesaid, or any part thereof, nor threatened so to do." And it further found that "plaintiff has not been damaged by any acts of the defendants, or either of them, in the sum of $1,000, nor in any other sum of money, or at all." The appellant claims that these findings are not supported by the evidence, while the respondents insist that there was a substantial conflict in the evidence upon the subject.

On looking at the evidence, we find that the appellant, speaking of his Perkins Bar Ditch, testified: "Since I bought it, water has been running in it steadily, except when turned out to clean the ditch, and several times when it has been taken from me, Bergin and Fronte, defendants, took it; they took it two years ago. It was turned back after I notified them not to take it; . . . . did not allow me one quarter of what my ditch was entitled to. My ditch was left only about three inches in the flume. They kept the water during the mining season so long as they mined there, then they gave it up. This water was worth to me from two dollars to four dollars per sluice head per day. Again last fall they took the water from my ditch; it might have been partly in December. When there was plenty

of water in the creek they would use most of it, and claim that I was only entitled to forty-three inches. They retained the water that time until I sued out an injunction in this action. . . . . A sluice head is thirty-six inches." And on cross-examination he testified: "When defendants were diverting water from the Perkins Bar Ditch, the amount they took was one half the quantity that ditch would carry. That ditch was not half full. I went and measured, and there was only two and one half inches in our flume." In answer to this, respondent Bergin testified: "In taking water in the Hop Lee and Fronte ditches I have not turned in any water, except when there was water flowing by the dam which diverts it into Perkins Bar Ditch."

This is all the testimony cited by respondents to show a conflict, and all, after a careful reading of the transcript, that we have been able to find. Does this show a substantial conflict? It must be noted that the witness does not say he always allowed water enough to flow by the head of his ditches to fill the plaintiff's ditch, nor does he name any quantity that he allowed to pass. His statement simply is that he never "turned in" any water when there was not water flowing by the plaintiff's dam. This might be literally true, even though after he had turned it in there was not water enough left in the stream to half fill the plaintiff's ditch.

It should also be noted that in their answer the defendants deny that the plaintiff's ditch has the capacity to carry, or the right to divert any greater quantity of water than 174 inches, delivered under a five-inch pressure, and that one of the defendants' witnesses, who had been their ditch-tender, testified that he "always allowed to Perkins Bar Ditch from 150 to 160 inches."

The appellant was entitled at all times to take from the stream 247½ inches of water, delivered under a five-inch pressure, and it is clear from his testimony that the respondents did not always respect his rights, but diverted a portion of that water from him, and thereby did him damage. The testimony of respondents in answer to this was evasive, and did not, we think, create a substantial conflict.

For the reasons last stated the judgment and order should be reversed and the cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial.