FULLER ET AL. v. SWAN RIVER PLACER MIN. Co.

1. EQUITY — JURISDICTION — LEGAL REMEDY INADEQUATE.— The appropriate remedy for acts which render the development of a mining claim impossible is in equity, the legal remedy being inadequate.

2. MINES AND MINING — CUSTOM OF MINERS — DUMPING TAILINGS — INJUNCTION.— Under General Statutes of 1883, section 2393, a miner must take care of his tailings on his own property, and evidence of a custom of miners to dump their tailings upon their own grounds, and let them take care of themselves, is insufficient to prevent the issuing of an injunction against the washing down of tailings on plaintiff's claim, where the consent of plaintiff to the acts complained of is not shown.

3. INJUNCTION — INTERFERENCE WITH MINING CLAIM — EVIDENCE OF INJURY.— Where an injunction is sought against certain acts interfering with the development of plaintiff's mining claim, it is no objection that it does not appear how valuable plaintiff's claims are, it being impossible to estimate their value until their character has been demonstrated by development.

4. SAME — DELAY IN APPLICATION.— Where the diversion of water from plaintiff's mining claim is sought to be enjoined, it is no objection to relief that the building of the flume, by means of which the water was diverted, was begun more than five years before suit, where the particular diversion complained of occurred within a few months of the action.

5. WATER AND WATER-COURSES — DIVERSION OF STREAM.— One who has acquired the right to divert the waters of a stream may change the point of diversion and place of use without losing his right of priority, where the rights of others are not injuriously affected.

*Error to District Court of Jefferson County.*

THIS action was brought by several complainants to enjoin an alleged wrongful diversion and use of the wa-

ters of the South Swan and Middle Swan rivers by plaint-
iffs in error, Thomas H. Fuller, G. L. Havens, Aloy L.
Young, The Fuller Placer Min. Co., and The Swan River
& Georgia Gulch Min., Ditching & Fluming Co., and to
recover damages for such wrongful diversion and use.
The defendant in error has succeeded to all the rights of
the complainants in the original bill.

By the decree entered the plaintiffs in error are per-
petually enjoined from diverting, from the natural course
and channel thereof, any of the waters of the South
Swan river or of the tributaries thereof, except two hun-
dred and fifty inches thereof, which before the 10th day
of June, 1870, had been diverted by the ditch known as
the "South Swan" or "Pollard" ditch, and one hun-
dred and twenty-seven inches thereof, which, before the
10th day of June, 1870, had been diverted by the ditch
known as the "American Ditch;" and from diverting
any of the waters of the Middle Swan river, except one
hundred inches thereof, which, before the 10th day of
June, 1870, had been diverted by a certain flume known
as the "Stevens Flume;" and from diverting any of the
said waters save by means of the said American ditch,
Pollard ditch and Stevens flume. Plaintiffs in error
were also enjoined from in any way or manner causing
any logs, stumps, roots, rocks, gravel, tailings or sedi-
ment to be washed or sent down into the waters of the
South or Middle Swan rivers, or upon or into the flumes,
sluices, pit, ditches or other works used or which shall
be used by the defendant in error upon its premises, de-
scribed in said decree, or upon said premises, otherwise
than as prior to the 10th day of June, 1870, was wont to
be practiced by those using and enjoying the said Pol-
lard ditch, American ditch and Stevens flume.

Messrs. G. B. REED, WILLARD TELLER and M. B. CAR-
PENTER, for plaintiffs in error.

Messrs. WELLS, SMITH & MACON, for defendant in error.

Rising, C. It is urged by plaintiffs in error that the evidence is insufficient to sustain the findings of fact upon which the decree is based, and particularly as to the amount of water that had been appropriated by the Pollard ditch, the American ditch and the Stevens flume prior to the 10th day of June, 1870, and as to the custom of miners to dump their tailings upon their own ground and let them take care of themselves.

We have carefully examined the evidence and think it well sustains the finding of the court as to the amount of water appropriated by said ditches and flume by a beneficial use thereof. The existence of the custom claimed by plaintiffs in error is not established by the evidence. By section 2393 of the General Statutes then in force it is provided that no person shall be allowed to flood the property of another person with water, or to wash down the tailings of his sluice upon the claim or property of other persons, but that it shall be the duty of every miner to take care of his own tailings upon his own property, or become responsible for all damages that may arise therefrom. Any evidence which fails to show that defendant in error consented to the commission of the acts complained of is insufficient to confer any right to commit them.

It is claimed by plaintiffs in error that the mining claims of defendant in error have little or no value for mining purposes, and that, by reason of such fact, the case made by it for relief is barren of equity.

While it does not appear from the evidence how valuable the claims of defendant in error are, it does appear that they are considered to be valuable placer claims, bearing gold in paying quantities, and that the work that was interfered with by the acts complained of was being prosecuted by defendant in error for the purpose of their development; and it also clearly appears from the evidence that, until the character of the claims has been demonstrated by development, their value cannot be estimated.

There is no evidence upon which to base a comparison of values between the claims of plaintiffs in error and the claims of defendant in error, and, if there was, such comparison could not be considered in determining the rights of the parties.    If the claims of defendant in error are shown to be of any value, its rights therein and to the water it has appropriated must be protected.

It is urged by plaintiffs in error that this action ought not to be maintained because of the delay of the complainants in applying for relief; and the argument of counsel for plaintiffs in error in support of this claim is based upon the fact that the building of the flume, by means of which the wrongful diversion of water, and its wrongful use as complained of, were made, was commenced in 1871 — more than five years before this suit was brought.    It does not appear from the evidence that plaintiffs in error diverted or used any of the waters of South Swan or Middle Swan rivers to the detriment of the complainants until September, 1876, and this action was commenced in December, 1876.    Complainants were not required to institute proceedings to restrain the building of the flume, and are not estopped from maintaining this action by reason of their neglect to institute such proceedings, and there is no evidence in the case upon which an equitable estoppel can be based.

It is further urged by plaintiffs in error that defendant in error is not entitled to the equitable relief awarded by the decree, for the reason that there is a full, complete and adequate remedy at law for the wrongs complained of.    We do not think this claim is sustained by the facts. An action at law would not furnish any remedy for the injuries complained of.    From the nature of the case it would be an utter impossibility to show the extent of the injury to an undeveloped mining claim by acts which render the development of such claim an impossibility. From the nature of the injury, and by reason of its continuous character, the legal remedy is inadequate.  3 Pom.

Eq. Jur. § 1351, and note. In the argument of counsel other objections are made to the decree, in regard to which we think it is sufficient to say that the findings of fact by the court are well sustained by the evidence, and that the decree is sustained by such findings, and is in accordance with the law applicable to the case, except as to the provisions of the decree, which we will now proceed to consider.

By one of the provisions of the decree plaintiffs in error were enjoined "from diverting any of the waters [of the South Swan and Middle Swan rivers] save and by means of the American ditch, Pollard ditch and the Stevens flume, with the same capacity and grade as the same were and were wont to be used on or before the 10th day of June, 1870." It is contended by plaintiffs in error that this provision of the decree prohibits them from changing the point of diversion of the water they have the right to use, and that it prohibits them from using such water in any manner except as originally used by them and their grantors, and that it is clearly wrong in this respect.

We think the construction placed upon this provision of the decree by plaintiffs in error is warranted by the language used. It has been decided by this court, in *Sieber v. Frink*, 7 Colo. 148, that the point of diversion may be changed without affecting the right of priority, where no change is made in the quantity of water diverted, and no one is injured by the change. In that case the use, and the place where used, were the same after the change as before. The question is now presented whether such change in the point of diversion can be made for the purpose of changing the place of the use.

The supreme court of California has had this question before it several times, and a review of some of the cases will show the holding in that state, and the reasons given therefor. In *Maeris v. Bicknell*, 7 Cal. 262–264, it was held that "a party who makes a prior appropriation of

water can change the place of its use without losing that priority as against those whose rights have attached before the change," and this decision was based upon the fact that the adoption of any other rule would destroy the utility of the appropriation. In *Kidd v. Laird*, 15 Cal. 162–180, it was held that the rights of an appropriator to the water of a stream are strictly usufructuary, and, upon a review of some of the common-law authorities relating to the rules of law by which such rights are governed, the court, with reference to the rule applicable to a change of the place of diversion and a change of use, said "that in all cases the effect of the change upon the rights of others is the controlling consideration, and that, in the absence of injurious consequences to others, any change which the party chooses to make is legal and proper." In *Mining Co. v. Morgan*, 19 Cal. 609–616, it was again held that the right to change the point of diversion was absolute and unqualified, except as limited by the condition "that the change must not injuriously affect the right of others. In *Davis v. Gale*, 32 Cal. 27, the court, in speaking of the rights of an appropriator of water, say: "Appropriation, use and non-use are the tests of his right; and place of use, and character of use, are not. When he has made his appropriation, he becomes entitled to the use of the quantity which he has appropriated at any place where he may choose to convey it, and for any useful and beneficial purpose to which he may choose to apply it. Any other rule would lead to endless complications and most materially impair the value of water rights and privileges."

The rule, as here announced, seems to make the right to change the point of diversion and use absolute and unqualified. In *Water Co. v. Powell*, 34 Cal. 109, it appears that plaintiffs, as prior appropriators, diverted the water of Shady creek by means of a dam across the creek, and that the dam became filled by the deposits of

tailings from workings above; and when the dam became so filled the plaintiffs raised the same from time to time, until, by reason of the dam being so raised, the water set back upon mining claims of defendant, and interfered with the working thereof. Defendant destroyed the dam, and plaintiffs, by this action, sought to restrain defendant from further interfering with the dam. The court instructed the jury, in substance, that, if it became necessary for plaintiffs to raise the dam to turn the water into their ditch, they had the right so to do, notwithstanding any damage caused thereby to defendant.

This instruction was held to be erroneous, and the case has been cited as an authority against the rule permitting a change to be made in the point of diversion. An examination of the opinion will disclose the fact that, while some of the language used seems to warrant the inference that the right to change is denied, the decision is based upon the fact that, by reason of the injury alleged to be caused to defendant by the change, the act of the plaintiffs became a nuisance, so that the ruling in this case upon the facts seems to be in full accord with the rule laid down in *Kidd v. Laird* and *Mining Co. v. Morgan*, in so far as the absolute and unqualified right to change the point of diversion is limited by these cases to changes that will not injuriously affect others. In *Junkans v. Bergin*, 67 Cal. 267–270, the opinion contains the following statement relating to the right to change the point of diversion: "Undoubtedly one entitled to divert a quantity of water from a stream may take the same at any point of the stream, and may change the point of diversion at pleasure, if the rights of others be not injuriously affected by the change." In this case it was held that the change made might injuriously affect the defendants.

It seems to be well settled by these decisions that a prior appropriator of water from a stream may change the point of diversion and the place of use without affect-

ing his rights of priority, and all the cases reviewed, except the case of *Davis v. Gale*, make the right to make such change dependent upon the condition that the change shall not injuriously affect others. We think that the rule announced in *Kidd v. Laird*, "that, in the absence of injurious consequences to others, any change which the party chooses to make is legal and proper," is the only rule under which the rights of the prior appropriator can be fully exercised, and his rights, and the rights of all other persons, fully protected. The right to change, so limited, includes the point of diversion, and place and character of use.

It follows from these views that the decree should be modified by striking therefrom the following portion, to-wit: "and from diverting any of the said waters, save and by means of the said American ditch, Pollard ditch and Stevens flume, with the same capacity and grade as the same were and were wont to be used on or before the 10th day of June, 1870; and from in any way widening or deepening said American ditch, Pollard ditch or Stevens flume; and from increasing the grade thereof; and from using the same, or either thereof, with a greater width, depth or grade than as the same were wont to be used on and before the 10th day of June, A. D. 1870,"— and inserting in place of the portion stricken out the following words, to wit: "and from diverting or using any of said waters in any way or manner whereby such diversion or use will injuriously affect the complainants or their grantees in a greater degree than they would be affected by such diversion and use of said waters as prior to the 10th day of June, 1870, was wont to be practiced by those using and enjoying the said Pollard ditch, American ditch and Stevens flume." The costs of the writ of error and in this court should be paid by defendant in error.

DE FRANCE, C., and STALLCUP, C., concur.

PER CURIAM. For the reasons given in the foregoing opinion the judgment of the court below is reversed and the cause remanded, with directions that a decree be entered in accordance with the views expressed. The cost of proceeding in this court will be taxed to defendant in error.

*Reversed.*