[Filed March 26, 1890.]

## *A. J. CURTIS v. LA GRANDE HYDRAULIC WATER COMPANY.

WATER RIGHTS—PRIOR APPROPRIATION—The doctrine of prior appropriation, under the act of congress of 1866, applies to the public lands of the United States.

PRESCRIPTIVE RIGHT—How ACQUIRED.—To acquire a right by prescription in the lands of another upon the presumption of a grant, the possession must be adverse, continuous, uninterrupted, and by the acquiescence of the owner of the land over which the easement is claimed. If its inception is permissive, or under a license from the owner, it cannot avail to work an ouster.

LICENSE—EFFECT OF—REVOCABLE, UNLESS UNDER PARTICULAR CIRCUMSTANCES.—A license creates no interest in land. It is founded on personal confidence, and is not assignable, and its continuance depends on the will of the party giving it, and is revocable, unless the license is executed under such circumstances as would authorize the interference of equity to prevent fraud.

LICENSE—WHEN IRREVOCABLE.—To allow one to revoke a license when it was given to influence the conduct of another, and cause him to make large investments, would operate as a fraud, and warrant the interference of equity to prevent it, under the doctrine of equitable estoppel.

LICENSE—CONSTRUCTION OF.—By building a dam, laying the pipes, and making a diversion of the water, the licensee, by its acts and the consent of the licensor, fixed the point of diversion and the place on the land where the license was to be exercised; and it cannot be exercised at any other place.

LICENSE—ABANDONMENT OF.—In such case, at that point and place, the license is irrevocable so long as the dam and pipes remain for the purpose for which they were constructed, but, if abandoned, there can be no right to divert the water of the stream at any other place without the assent of all the parties in interest. On rehearing.

RIPARIAN RIGHTS—ESTOPPEL.—Facts examined and *held*, under the circumstances of the particular case, the plaintiff should not be permitted to set up her riparian interest so as to defeat the defendant's right to a certain portion of the water of

*Omitted from previous volume by mistake.—[REPORTER.

Mill creek, where the diversion was made under a claim of title and the defendant believed and had reason to believe that the claim was well founded, and the plaintiff stood by without asserting or making known her claim while the defendant was expending large sums of money and making extensive improvements under an honest and reasonable belief that it had the right to make such diversion, and without which its expenditures would prove a total loss.

Union county: J. A. FEE, Judge.

Plaintiff appeals. Modified.

*J. H. Slater & Son,* and *R. & E. B. Williams,* for Appellant.

Unless defendant's rights were acquired by adverse possession, as plead, they would amount only to a license. (*Nowlin* v. *Whipple,* 22 N. E. Rep. 669, Ind.; *Cagle* v. *Parker,* 97 N. C. 271, 2 S. E. Rep. 76; *Huston* v. *Bybee,* 17 Or. 140.)

If only a license, it was not assignable. (*Mumford* v. *Whitney,* 15 Wend. 380, 30 Am. Dec. 60; Hill's Code, §§ 781, 785, subdv. 6, and § 3002.)

An easement or right to take water from a running stream on land of another acquired by use is as definite in its location, when established, as when resting in grant and particularly described by deed; and however established, whether by deed or otherwise, the right cannot be exercised at another point. (*Ev. L. St. J. O. H.* v. *Buf. Hydraulic Association,* 64 N. Y. 564; *Onthank* v. *L. S. & M. S. R. R. Co.* 71 N. Y. 194, 27 Am. Rep. 35; *Athens Mfg. Co.* v. *Rucker,* 80 Ga. 291, 4 S. E. Rep. 885.)

The elements of estoppel are wanting in the third separate answer. (*McClure* v. *Livermore,* 78 Me. 390, 6 Atl. Rep. 11; *Wells* v. *Austin,* 59 Vt. 157, 10 Atl. Rep. 409; *Clement* v. *Gould,* 61 Vt. 513, 18 Atl. Rep. 453; *Lux* v. *Haggin,* 69 Cal. 255; *Risien* v. *Brown,* 73 Tex. 135, 10 S. W. Rep. 661.)

A special defense must be complete in itself, and cannot be aided by statements in other separate defenses. (Hill's Code, §§ 73, 397; *Reid* v. *Huston,* 55 Ind. 173; *Smith* v. *Little,* 67 Ind. 549; *Benedict* v. *Sigmore,* 6 How. Pr. 298.)

A plea of prescription to support a diversion of water must be certain and definite as to amount and place of diversion. If this answer is aided by the preceding separate defenses, there is no right by prescription, as it is alleged to have been by consent, etc., which constitute a license. (*Maul-*

*din* v. *Cox*, 67 Cal. 387; *Flora* v. *Carbeau*, 38 N. Y. 115; *Burbank* v. *Fay*, 65 N. Y. 65; Wash. on Eas. 86 and 87; *Springer* v. *Young*, 14 Or. 285; *Nowlin* v. *Whipple*, 22 N. E. Rep. 669; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323.)

Conditions made precedent by statute must be complied with before there is corporate existence. (Marowitz on Cor. §§ 22, 28, 737; Angel & Ames on Cor. §§ 83, 88; *Kelly* v. *Ruble*, 11 Or. 75; *Indianapolis Mining Co.* v. *Hirkness*, 66 Ind. 146; *Spencer, Field & Co.* v. *Paul Cook*, 15 La. 153; *Harris* v. *McGregor*, 29 Cal. 127; *Bigelow* v. *Gregory*, 73 Ill. 197; *Holladay* v. *Elliott*, 8 Or. 91.)

The subscription to the stock of that company was unauthorized and void. (*Holladay* v. *Elliott*, 8 Or. 91; Marowitz on Cor. §§ 44, 45, 56, 67, 737, 738; see also §§ 740, 756, 741, 742 and 443, as to enforcement of contracts of subscriptions in certain cases.)

If the La Grande Water Company had legal existence it could acquire an easement for the use of the water in question, otherwise not. (Marowitz on Cor. 754, 768.)

Contracts of illegal corporations can only be enforced by and against those who have dealt with them. (Marowitz on Cor. §§ 745, 746, 649, 650, 750–3.)

Appointment of an agent by a corporation can only be proven by its records. (*Cayote Mining Co.* v. *Ruble*, 8 Or. 293, 15 Wend. 256; *McCullough* v. *Moss*, 5 Denio, 574.)

A permanent interest in land cannot be acquired by parol. (Hill's Code, §§ 781, 785, 3002; *Miller* v. *Auburn, &c.* 6 Hill, 61; *Parish* v. *Caspar*, 15 Wend. 380; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Huston* v. *Bybee*, 17 Or. 140; *Nowlin* v. *Whipple*, 22 N. E. Rep. 669; *Cagle* v. *Parker*, 97 N. C. 271, 2 S. E. Rep. 76.)

As such, if it became irrevocable after the first system of water works was put in, it could be revoked when those works were removed, abandoned or become decayed, and new ones were being constructed in another place. (*Lake Erie & W. R. R. Co.* v. *Michmer*, 20 N. E. Rep. 254; *Clark* v. *Gliddin*, 60 Vt. 702, 15 Atl. Rep. 358, 362.)

The revocation could be made by the grantee of the one who

originally gave the license. (*Lake Erie & W. R. R. Co.* v. *Michmer*, 20 N. E. Rep. 254.)

This is not the case of an implied grant of an easement where an owner burdens one part of his estate with a servitude for the benefit of another portion and then severs the title. One of the main elements necessary to the creation of such an easement is wanting. (*Kelly* v. *Dunning*, 43 N. J. Eq. 62, 10 Atl. Rep. 276, 281; *Nellis* v. *Monson*, 108 N. Y. 452.)

If the La Grande Water Company gained any right by adverse possession, the amount of water actually used for the statutory time would be the measure of that right, and it could not be increased. (*Boynton* v. *Longley*, 19 Nev. 69; *Athens Mfg. Co.* v. *Rucker*, 80 Ga. 291, 4 S. E. Rep. 885.)

If the actual use or possession was abandoned, but only for a moment, the rights of plaintiff were revived, and the two possessions could not be tacked. (*Erck* v. *Church*, 87 Tenn. 575, 11 S. W. Rep. 794.)

If defendant had any right to divert water at the old dam, it could not change the point of diversion nor amount of water taken. (*Ev. L. St. J. O. H.* v. *Buf. Hydraulic Association*, 64 N. Y. 561; *Onthank* v. *Railroad Co.* 71 N. Y. 196, 27 Am. Rep. 35; Washburn on Easements, 6, 44; *Tucker* v. *S. F. M. Co.* 13 Or. 28.)

There can be no adverse possession in this case, for the pleadings as well as the evidence show that the diversion was made not under a claim of right, but by the consent, agreement and authority of the owners of the land. (*Burbank* v. *Fay*, 65 N. Y. 65; Wash. on Eas. 86, 87; *Springer* v. *Young*, 14 Or. 285; *Nowlin* v. *Whipple*, 22 N. E. Rep. 669; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Parish* v. *Caspar*, 10 N. E. Rep. 109.)

*Williams & Wood*, for Respondent.

The act of congress of July 26, 1866, confirmed water rights which theretofore rested in custom. (*Jennison* v. *Kirk*, 98 U. S. 453; *Atchison* v. *Peterson*, 20 Wall. 507; *Cave* v. *Crafts*, 53 Cal. 135; *Osgood* v. *Eldorado Water Co.* 56 Cal. 571; *Irwin* v. *Phillips*, 5 Cal. 140, 63 Am. Dec. 113.)

The following "purposes" have been held to be "useful,"

viz., mining (*Atchison* v. *Peterson*, 20 Wall. 507); milling (*Ortman* v. *Dixon*, 13 Cal. 34; *McDonald* v. *Bear River, &c., Co.* 13 Cal. 220); irrigating (*Basey* v. *Gallagher*, 20 Wall. 670; *Crandall* v. *Woods*, 8 Cal. 136; *Cave* v. *Crafts*, 53 Cal. 135); aqueduct (*Crandall* v. *Woods*, 8 Cal. 136; *Feliz* v. *Los Angeles*, 58 Cal. 73.)

The right to divert the water was not lost by a change in the point of tap. (*Kidd* v. *Laird*, 15 Cal. 162, 76 Am. Dec. 472; *Butte, &c., Co.* v. *Morgan*, 19 Cal. 609; *Junkans* v. *Bergin*, 67 Cal. 267; *Fuller* v. *Swan River, &c., Co.* 12 Colo. 12.)

Neither does a change in the use of the water work a forfeiture. (*McDonald* v. *Bear River, &c., Co.* 13 Cal. 220; *Maeris* v. *Bicknell*, 7 Cal. 262, 68 Am. Dec. 257; *Ortman* v. *Dixon*, 13 Cal. 34 (1859) at 39; *Davis* v. *Gale*, 32 Cal. 27, 91 Am. Dec. 554.)

There can be no question that the *exclusive* use of *all* the waters of such a stream can be acquired by prior appropriation. (*Bear River, &c., Co.* v. *New York Co.* 8 Cal. 327, 86 Am. Dec. 325; *Ortman* v. *Dixon*, 13 Cal. 34; *Kidd* v. *Laird*, 15 Cal. 162, 76 Am. Dec. 472; *Feliz* v. *Los Angeles*, 58 Cal. 73.)

And it is equally clear that when this right has been once acquired, those locating upon the public domain subsequently, whether above or below the point of diversion, hold subject to the right. (*Kaler* v. *Campbell*, 13 Or. 596; *Broder* v. *Water Co.* 101 U. S. 274; *Irwin* v. *Phillips*, 5 Cal. 140, 63 Am. Dec. 113; *Hill* v. *King*, 8 Cal. 337; *Coffin* v. *Left-Hand Ditch Co.* 6 Colo. 443; *Hammond* v. *Rose et al.* 11 Colo. 524, 7 Am. St. Rep. 258.)

Indeed the doctrine of prior appropriation of water is generally recognized in all of the Pacific coast states and territories. (*Jones* v. *Adams*, 19 Nev. 78, 3 Am. St. Rep. 788; Gould, Waters, § 228; *Kaler* v. *Campbell*, 13 Or. 596; *Tolman* v. *Casey*, 15 Or. 83; *Dodge* v. *Marden*, 7 Or. 456; *Neil* v. *Tolman*, 12 Or. 289; *Reno Smelting, &c., Co.* v. *Stevenson*, 20 Nev. 269, 19 Am. St. Rep. 364; *Clough* v. *Wing*, 17 Pac. Rep. 453, Ariz.; *Coffin* v. *Ditch Co.* 6 Colo. 443; *Hammond* v. *Rose*, 11 Colo. 524, 7 Am. St. Rep. 258.)

"The policy of the common law prohibition against unauthorized corporate action" (2 Morawetz, Priv. Corpns. § 750), and not

estoppel, as is sometimes said, would seem to require that plaintiff should not now be heard to say that the actual owner of that water which she bought was not then a corporation. (*Booske* v. *Gulf Ice Co.* 24 Fla. 550, 5 South. Rep. 248 (1888) at 251; *Feliz* v. *Los Angeles*, 58 Cal. 73 (1881); Angell & Ames, Corpns. § 777; Morawetz, Priv. Corpns. (2 ed.) §§ 750–752.)

In addition, it should be remarked that this question can be raised only by the state in a direct proceeding to vacate the charter of the company. (Angell & Ames, Corpns. § 777.)

It is submitted, due incorporation being shown, that this is amply sufficient to constitute an acceptance. (*Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181; Morawetz, Priv. Corpns. §§ 23, 29; Angell & Ames, Corpns. § 94.)

No deed was necessary to transfer these water rights from the old company — as the water would be after being separated from the original source of supply and gathered into mains (*Heyneman* v. *Blake*, 19 Cal. 595), or a ditch (*Parks Canal, etc., Co.* v. *Hoyt*, 57 Cal. 44), or as realty (*Hill* v. *Newman*, 5 Cal. 445),— it may be disposed of in parol; and when possession has been taken and money spent under such a transfer, a court of equity would, if necessary, enforce specific performance and decree a deed. (*Ortman* v. *Dixon*, 13 Cal. 34; *McDonald* v. *Bear River, etc., Co.* 13 Cal. 220; *Franklin* v. *Pollard Mill Co.* 88 Ala. 318, 6 South. Rep. 685; Washburn Easements, 408.)

The same is true as to the servitude granted the old company by Green Arnold, that company having held possession for more than ten years. (*Sumner* v. *Stevens*, 47 Mass. 337; *Legg* v. *Horn*, 45 Conn. 409; *Geddis* v. *Parish, etc.*, 1 Wash. 587.)

It is equally clear that the possession of the new company may, if necessary, be tacked to that of the old to make out the full period of limitations. (*Stettnische* v. *Lamb*, 23 Neb. 747, 26 N. W. Rep. 374; Buswell, Limitations, § 239 *et seq.*)

As to the Arnold tract, plaintiff is precluded from any cause of action by reason of the fact that when she bought of McComas this servitude of diversion was visibly annexed to that tract. (*Oregon Iron Co.* v. *Trullenger*, 3 Or. 1; *Quinlan* v.

*Noble,* 75 Cal. 250; *Lampman* v. *Milks,* 21 N. Y. 505; *Seymour* v. *Lewis,* 13 N. J. Eq. 439, 78 Am. Dec. 108; Gould, Waters, § 354.)

Having acquiesced in the open and public diversion of the water for twenty years, plaintiff is without remedy against it in equity. (*Parke* v. *Kilham,* 8 Cal. 78, 68 Am. Dec. 310; *Lehigh Co.* v. *Moyle,* 4 Utah, 327, 9 Pac. Rep. 867 (1886), at 877.)

It is certainly but fair that the strong arm of *injunction* should be withdrawn from her support, and that she should be sent for her damages to a court of law. (*Smith* v. *Adams,* 6 Paige (N. Y.) 435 (1837), at 443; *Alhambra, etc., Co.* v. *Richardson,* 72 Cal. 598; *Davis* v. *Gale,* 32 Cal. 27.)

Indeed, the defendant's position is so unassailably strong and its case so just, that we think that full and complete equity would be done by a decree enjoining the plaintiff from proceeding at law. (*Sheldon* v. *Rockwell,* 9 Wis. 166, 76 Am. Dec. 265; *Raritan Water Co.* v. *Veght,* 21 N. J. Eq. 475; *Parke* v. *Kilham,* 8 Cal. 78, 68 Am. Dec. 310; *Lehigh Co.* v. *Moyle,* 4 Utah, 327, 9 Pac. Rep. 877; *Dickerson* v. *Colgrove,* 100 U. S. 580; *Smith* v. *Adams,* 6 Paige, 443.)

LORD, J.—This is a suit to restrain the diversion of water from a natural water-course on the land of the plaintiff. The defense is three-fold: (1) Prior appropriation; (2) prescription; and (3) estoppel *in pais.* In substance, the facts are that the defendant constructed a dam across Mill creek upon lands owned by Green Arnold, and occupied the same, with his consent and authority, for the purpose of diverting water from said creek, which was effected by means of a pipe of a certain size inserted in the dam, and conveyed to the town of La Grande for the use of its inhabitants; that in June, 1887, the defendant constructed a new dam across said creek, some 1,000 feet above the old dam, upon lands owned by D. Chaplin, and removed the pipe which. had been formerly used and laid upon the lands of Arnold as a diverting pipe of the old dam, and inserted it in the new dam, and used and occupied all the lands necessary for that purpose, with the consent and authority of Chaplin and

Arnold; that in the year 1871, after such consent was given, and the pipe laid, and the land occupied for the purposes stated, Arnold sold a certain described portion of his land, through which said creek ran, to one McComas, and McComas in 1876 sold the same to the plaintiff; but this portion of the land constituted no part of that upon which said dam had been constructed and pipe laid.

It will be seen, then, that long before the plaintiff acquired any title to a portion of the land through which said creek flowed, she purchased it subject to whatever rights the defendant had acquired in the premises by virtue of the consent and authority of the grantor, Arnold, and the construction of the dam, laying of the pipes, etc., in pursuance thereof, to divert the water for the uses specified. Assuming that the license granted by Arnold, and the investment made by the defendant for its enjoyment, operated as an estoppel *in pais*, the contention of the plaintiff is that when the defendant removed the dam and pipe from the land of Arnold and constructed another dam and laid other or the same pipe on the land of Chaplin, the effect was to revoke such license, and to revive the rights of the plaintiff to have the stream flow through her land without interruption or perceptible diminution; that neither Chaplin nor Arnold, nor both, could authorize the change of location without the consent of the plaintiff, who is a party in interest, and that, when it was so done without her consent, it was an interference with her rights which equity will restrain by injunction. To avoid the effect of this contention, the defendant interposes (1) the defense of prior appropriation of the waters of the creek under the act of congress of July 26, 1866 (14 St. U. S. 253), that "whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same " etc.

While that act was passed a year later than the facts show the waters of the creek were diverted, yet it applies only to government land, and streams flowing through it. In these, under the circumstances indicated in the act, the prior appropriation of the water may operate to secure a vested right to divert it, which shall be maintained and protected. But it has no application to the lands of individual owners, and, as against them, can confer no right to divert the waters of streams flowing through their lands. The facts disclosed by this record show that the diversion took place, not from a stream upon and running through government lands, but from a stream at a point upon and running through the lands of Green Arnold, a part of which now belongs to the plaintiff, and through which a portion of that stream naturally runs, and that the permission to construct the dam, and lay the pipes by means whereof the waters of the creek were diverted from flowing, as was their wont, through it, was given by Arnold, and their possession and occupation for the purposes specified taken and used in pursuance of it. In *Kaler* v. *Campbell,* 13 Or. 596, both parties diverted the water at or near the same point, which was off their own lands; and at the time of the diversion and appropriation upon land belonging to the United States; but in the case at bar the diversion was from a stream upon private land, and done with the consent of the owner first obtained. Upon the facts, then, the doctrine of prior appropriation under the act of congress can have no application.

The next defense urged is that the defendant has acquired the right by prescription to occupy the land, and divert the waters of that stream. It is true that the plaintiff practically admits that the company took possession and diverted the waters in the year 1865, and conducted it into La Grande by means of pipes, and that it has continued to so divert the waters of that creek and use the lands for that purpose ever since. But the facts show the waters were not so diverted and possession taken of the land to construct the dam and lay pipes as a matter of right against Arnold

or the plaintiff, but under the license or permission of Arnold in the year 1865, which prevented it being adverse. To acquire a right of prescription in the lands of another upon the presumption of a grant, the possession must be adverse, continuous, uninterrupted, and by the acquiescence of the owner of the land upon which the easement is claimed. If its inception is permissive or under a license from the owner, it cannot avail to work an ouster. To effect that result, the possession taken must be open, hostile, and continuous; "he must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." Under this rule, an adverse possession cannot grow out of a permissive enjoyment; and so speak the decisions without a dissentient voice, including this court. (*Springer* v. *Young*, 14 Or. 285.)

The next and main defense is that the defendant constructed its dam and laid the pipes on the land and diverted the waters for the uses specified, at the place designated on the stream, by the permission or under a license from Arnold, who was then the owner of the land through which the stream flowed, and that in consequence of large investments of money and labor expended in the construction of such dam and laying such pipes for the purpose of diverting the waters of that stream, the license has become irrevocable, or turned into an agreement which equity will enforce. The principle on which this contention is based is, that after one has acted on the faith of a parol license and made permanent improvements, the owner will be estopped from revoking his license to prevent injustice. The application of this principle of equitable estoppel after one has acted on the faith of a parol license is strongly resisted by some authorities, holding, in effect, that it operates to overturn the statute of frauds, and, for all practical purposes, to create an interest in land in disregard of the requirements of that statute. A license creates no interest in land. It is founded on personal confidence, and is not assignable; and

its continuance depends on the pleasure of the party giving it; and is revocable unless executed under such circumstances as would authorize the interference of equity to prevent injustice. At law a license could not have the effect to create an interest in lands upon the theory of becoming irrevocable by estoppel, as courts of law deal with the legal aspect of estates in land, and cannot enforce equities which grow out of an equitable estoppel against the owner of land.

Judge Cooley seems to regard it as a serious reproach to the law that it should fail to provide some adequate protection against the injustice of a revocation after the licensee, in reliance upon the license, has made large and expensive improvements. (*Maxwell* v. *Bridge Co.* 41 Mich. 467.) But it is unnecessary for us to consider the effect of such a position at law, as it is only the equitable rights of the parties that are now under inquiry. An executed license is treated like a parol agreement in equity: it will not allow the statute to be used as a cover for fraud; it will not permit advantage to be taken of the form of the consent, although not within the statute of frauds, after large expenditures of money or labor have been invested in permanent improvements upon the land, in good faith, upon the reliance reposed in such consent. To allow one to revoke his consent when it was given or had the effect to influence the conduct of another and cause him to make large investments, would operate as a fraud and warrant the interference of equity to prevent it, under the doctrine of equitable estoppel. The ground of the jurisdiction is to prevent injustice or fraud. "Its effect," said Chancellor Bates, "when applied, is to restrain a party from exercising his legal right; and this even a court of equity cannot do unless there has been on his part some conduct, declaration, or improper concealment misleading an innocent person to his prejudice, and rendering the assertion of the legal right as against such person an act of bad faith amounting to constructive fraud. Moreover, it may be well added that, to warrant the interference of the court with the legal right or title of the party, the case

relied on to work the estoppel must be clear, beyond doubt, upon the facts; and the more stringently do these rules apply in a case * * * where the effect of the estoppel, if allowed, will be to convert what was originally a bare privilege, temporary and revocable, into an easement in the licensor's land, perpetually binding it, and transmissible from the licensee." (*Jackson* v. *Railroad Co.* 4 Del. Ch. 180.)

The testimony of Green Arnold, a witness for the defendant, shows that he was the owner of the land, and gave the La Grande Water Company permission to take the water and the right of way for the use of his land for the construction of the dam and laying of the pipes. In order to show in what his permission consisted, he testified that he assisted in putting in the dam and starting the water-works; and, so far as he is concerned, he assents to the change of location from the place of diversion, and the removal of the pipes, etc., to the land of Chaplin. In short, it is clear that what was done by the company was done not only with his consent, but that he intended it to induce the construction of the works and the diversion of the water for the uses specified. Other testimony there is in corroboration of this, but further reference is unnecessary. Upon the undisputed facts, as between him and the defendant, if he were to attempt to revoke his license to use his land and divert the water for the purposes indicated, a court of equity would apply the doctrine of equitable estoppel and enjoin him. As against him and the plaintiff, then, who subsequently purchased a piece of the land through which the stream flowed, it may be assumed that the license is irrevocable so long as the interest created by it endures.

By building the dam, laying the pipes, and making the diversion of the water, the defendant, by its act and the consent of Arnold, fixed the place on the land where the license was to be exercised and enjoyed; and the inquiry is, can it be exercised at any other place on the land of Arnold or above it, although with the consent and permission of its owner, without reviving the right of the plaintiff to have

the waters of that creek flow without interruption through her land? What was the effect of a change of location which involved the abandonment of the use and enjoyment of the license upon the land of Arnold? The plaintiff purchased subject to the rights acquired by the defendant to divert the water and use the land under the license, which fixed the point of diversion on the stream, and the particular land to be occupied for that purpose, as definitely as if it were described in a deed; and it cannot be exercised at any other place. It is to that point, and the use of this land for the purposes specified, that the facts created an equitable estoppel, and rendered the license irrevocable, so long as the dam and pipes remained for the purpose for which they were constructed and laid. If these should be allowed to fall into decay and disuse, or be abandoned, the cause of the diversion ceasing, the waters of the stream would resume their accustomed channels and flow uninterruptedly through the plaintiff's land. Neither Arnold nor Chaplin could give a right of diversion at any other place against the consent of the plaintiff, who was entitled to have the waters of that stream flow through her land subject to the license created by the estoppel. When the license was abandoned at that point and place, the defendant had no right at any other to divert the waters of the creek without the consent of the plaintiff, through whose land it flowed. These parties might give their consent, and so far so good, to divert at some other place on their land; but, as the exercise of such a right or privilege affected her rights in the premises, it could not be used and enjoyed by the defendant without her consent.

It may not be amiss to say that we have omitted a detail of the facts, such as the incorporation of 1880, etc., because they are not essential, in the view taken, to the conclusion reached. It results that the plaintiff is entitled to the injunction prayed for, and $25 as damages and costs and disbursements; and it is so ordered.

[Filed December 8, 1890.]

On rehearing.

Strahan, C. J.—This case was heretofore before this court and a conclusion was reached reversing the decree of the court below, and enjoining the defendant from making the diversion of the water complained of. On the petition of the respondent a rehearing was ordered, and the case has been again fully argued at this term. There is one question that was overlooked, or at least the attention of the court was not sufficiently drawn to it, and that is the passive acquiescence of the plaintiff, or those under whom she claims, in the removal of the dam from the point on Mill creek where the La Grande Water Company had established it in about the year 1865 to a point about 1,000 feet higher up said stream, and the expenditures made by plaintiff in consequence of such removal. These are some of the findings of the referee and of the court below on those subjects: "(17) That the said defendant, since the said last diversion referred to, constructed a system of water-works in connection therewith in the said town of La Grande, Oregon, and have expended the sum of $8,000 in the construction of the same; (18) that the construction of said water-works was public, and plaintiff knew of the same, but that she never objected to the construction thereof; (19) that the diversion of the nine square inches of water from Mill creek by the defendant and its grantor, the La Grande Water Company, as hereinbefore stated, was for the period of twenty-two years, and was open, notorious, uninterrupted, practicable, continuous, by the acquiescence of the plaintiff and her grantors, and under a claim of right, from the month of July, 1865, to the time the defendant built the new dam, in 1887; (20) that the plaintiff purchased her land described in her complaint subject to the right of the La Grande Water Company and its successors to divert said water out of said Mill creek as aforesaid, and with notice of the same at the time of her purchase, and that she is estopped to deny the same or allege to the contrary."

The court, in disposing of the referee's report, among others, made the following finding: "No. 9. The court finds as follows: That in the month of July, 1865, after the organization of said company, the said Green Arnold gave to the said La Grande Water Company the right to enter and go upon the said lands hereinafter described, and to divert water from Mill creek for the purpose of supplying the town of La Grande with water for hire, or otherwise, and also gave it the exclusive right to erect and maintain all necessary works for the purpose of conducting said waters so diverted to the town of La Grande, Oregon, the same to be distributed as said company saw fit; that immediately thereafter the said La Grande Water Company, in pursuance of said grant, did enter upon said land of said Green Arnold aforesaid, at a point about sixty rods above the plaintiff's premises, on said Mill creek, and diverted water therefrom by means of a square box about 12 feet long and 3x3 inches at one end and 5x6 inches at the other, and also constructed across said creek a dam five feet high, and put in a system of water." "No. 19. The court finds as follows: That the diversion of five-sixths of the water of said Mill creek during the dry season of the year, and as much water as said box, used for diverting purposes, and hereinfore described, will carry during the remainder of the year, has been open, notorious, uninterrupted, peaceable, continuous and under claim of right by the defendant and its grantor, the La Grande Water Company, for a period of twenty-two years, and said use and enjoyment of said water and the rights and privileges thereto belonging had been acquiesced in by the plaintiff and her grantors ever since the month of July, A. D. 1865, to the time defendant built his new dam in 1887." "No. 21. The court finds as follows: That the plaintiff has sustained no damage by reason of the removal of said dam or the diversion of said water."

The defendant and its predecessor in interest have been in the actual use of this water for a long time, so far as appears, without objection from any one, and it assumed

that such possession had ripened into an absolute title. Whether the plaintiff participated in that view at the time of the removal does not appear affirmatively, nor is it material. She knew of the removal. She also knew that the defendant was making extensive improvements and large expenditures in money which, without the use of the water, would be utterly worthless. She knew that the defendant, in making these improvements, relied upon its assumed right to divert the water at its new dam, and she must have known that the defendant would not have made these expenditures if it had known such right did not exist. Under these circumstances, we think, she could not be silent. She was bound to make known her claim to defendant before it had so far changed its position that the assertion of such claim would operate as a fraud upon it, and inflict great damage without any possibility of compensation. We have the less hesitancy in announcing this conclusion for the reason that the plaintiff's situation is no worse than it was before the dam was moved up the creek. The same quantity of water will pass the upper dam that did the lower, and whatever advantages accrued to the plaintiff prior to such change will still be hers. Upon the second argument counsel for the appellant have cited Ang. Water Courses, § 29; Washb. Easem. p. 661; Gould, Waters, § 237; *Kidd* v. *Laird,* 15 Cal. 179, 76 Am. Dec. 472; *Junkans* v. *Bergin,* 67 Cal. 267; *Davis* v. *Gale,* 32 Cal. 34, 91 Am. Dec. 554; *Fuller* v. *Mining Co.* 12 Colo. 12; *Belknap* v. *Trimble,* 3 Paige, 605; *Whittier* v. *Cocheco Co.* 9 N. H. 454, 32 Am. Dec. 382, as tending to sustain his contention on the other question discussed, that is, the right claimed by the appellant to change the place of diversion of the water without forfeiting its right to the water. But it is not thought that these authorities reach the facts of this particular case. We do not deem it of importance to enter upon the re-examination of that question. The former opinion will therefore be so far modified that the defendant, its successors and assigns, may take from said Mill creek at its present dam and point of diversion, the same quantity of

XX. OR. 4,

water, and no more, that it and its predecessor in interest had been accustomed to take at the lower dam. The defendant will also be required to have or permit no waste gate at its reservoir, so that the surplus water shall flow back into Mill creek at its dam, or, if that be impracticable by reason of the extent of the fall between the dam and the reservoir, then the defendant shall cause such surplus water entering its reservoir to flow back into Mill creek at the highest point up said stream above the plaintiff's premises, where the same is reasonably practicable, and for that purpose it may establish a waste-gate at said reservoir; and for the purpose of giving effect to this decree, the court below is authorized to issue such writs of injunction, mandatory or otherwise, as may be necessary. The parties may also, from time to time, apply to the court below for such modification of this decree in relation to the manner of the use of said water by the defendant as the justice of the case may require.

In view of all the circumstances of this case, we have thought proper to award costs to the plaintiff.