## BUTTE T. M. COMPANY v. MORGAN et al.

A PERSON appropriating and diverting the water of a stream at a given point, cannot afterwards change the point of diversion to the prejudice of a subsequent locator.

*Kidd* v. *Laird* (15 Cal. 161) does not hold that the first appropriator has an absolute and unqualified right to change the point of diversion, and the doctrine of that case is affirmed.

Where a party attempts to construct a dam on a creek, for the purpose of diverting the water at that point, and such diversion is illegal as against another party, who has a dam lower down, the latter may oust the former from the possession of the ground at that point, and prevent the construction of the dam.

APPEAL from the Fifteenth District.

The findings of the Court below, with the conclusions reached, are as follows:

" In the spring of 1853, Morrow & Co. erected a dam upon ' Saw Mill Ravine,' and dug a ditch, by which they appropriated and used thirty inches of the water of the ravine. This right of thirty inches has been transferred to Gregory & Co., and the point of tapping the stream has been changed one mile further up, and near the source. It is now known as the Gregory Ditch. In May, 1853, (after the water of the Gregory Ditch had been appropriated) Lehman & Co. posted notices on Saw Mill Ravine, claiming all the surplus water of the ravine, and in November and December of that year erected their dam some distance below the dam of Gregory & Co., and in January, 1854, commenced the use of water from the ravine. Their ditch, as dug at that time, was of the capacity of one hundred and fifty inches ; but the flume along the line of the ditch was of only sixty inches capacity, and there is no showing that the capacity of the flume has ever been increased. This right has been transferred to plaintiffs, and is known as the Butte Table Mountain Ditch.

" In November, 1855, Lewis & Co. erected a dam upon the ravine, about six hundred yards above the dam of the Butte Table Mountain Ditch, claiming the surplus water of the ravine—whatever the same might be—for the purpose of working mining claims

owned by themselves and others along the banks of the Saw Mill Ravine, and have used the waters of the ravine since that time for the purpose appropriated, discharging it back into the ravine above the dam of the Butte Table Mountain Company.    This right has been transferred to the defendants.    The defendants have, since the first diversion of the water in the fall of 1855, changed the course of their diversion from the east to the west bank of the ravine, tapping the stream at about the same point, and returning the water back to the ravine still above the head of the Butte Table Mountain Company dam.

" In the fall of 1858, the plaintiffs erected a dam on the ravine some distance above the head of their old dam, and below where defendants discharged the water from their ditch back into the ravine, and diverted about eight or ten inches of water by means of the dam and trough to a tunnel claim of plaintiffs.    This water was used as a motive power in propelling some machinery for the ventilation of plaintiffs' tunnel.

" The water used by defendants, with the gravel and sediment from their mining claims, is turned into the ravine above this small dam of plaintiffs.    The water diverted by the Gregory Ditch, after being used in mining, was discharged into Campbell's Ravine, and found its way, with the gravel and sediment carried with it, back into Saw Mill Ravine, below the dam of defendants, but above both the dams of plaintiffs.

" The gravel and sediment coming down Saw Mill Ravine sometimes obstructed the upper dam and trough of plaintiffs, so that sufficient water could not pass through to propel the machinery for the ventilation of their tunnel.    There is no evidence to show any obstruction to the dam or ditch of plaintiffs further down the ravine, located in 1853.

" In November, 1859, the plaintiffs selected a point upon Saw Mill Ravine, some distance above the dam of defendants, for the purpose of erecting a new dam, by which to divert the water at that point through a ditch intended to be dug by plaintiffs to convey the water to certain claims on the east bank of the ravine. This contemplated ditch would have diverted the water entirely from the defendants' dam and ditch.    From this point on the rav-

ine, selected for their dam and reservoir, the plaintiffs were ousted by defendants, and defendants themselves erected a reservoir at that point.  There is no ditch connection with this reservoir, its object being by the defendants to collect the water during the night for use during the day further down the ravine.

" Plaintiffs allege that had they been permitted to divert the water at the point selected by them in November, 1859, they could have sold the water they intended to convey for at least ten dollars per day, from the eighteenth of November until the trial of this cause ;  and being prevented by defendants, they have been damnified to that extent, and pray judgment.  They further allege that they have been damnified ten dollars per day by the wrongful acts of defendants in diverting the water from the small dam of plaintiffs, by which the water was diverted to the tunnel of plaintiffs, from the eighteenth of November until the present time, and pray judgment.

" The complaint claims the ownership of the entire water of Saw Mill Ravine, with its tributaries, from the dam of plaintiffs, located in 1853 by Lehman & Co., to the source of the ravine—with the exception of that portion appropriated by the Gregory Ditch—and upon this proposition of ownership from their dam to the source of the ravine, claim the right to divert the water at any point, or at any time they may see proper, without reference to any rights that may have arisen above their dam since its location, in November, 1853."

The Judge below then cites *Kidd* v. *Laird*, (15 Cal. 161) *Bear River Co.* v. *York Mining Co.*, (8 Id. 327) *Butte Canal Ditch Co.* v. *Vaughn*, (11 Id. 143) and then proceeds :

" Under these decisions, plaintiffs, by the location of their ditch in 1853, were entitled to the water of the ravine, in quantity sufficient to fill their ditch : that quantity they were entitled to have flow to them undiminished and uninterrupted ; but if deteriorated in quality, they could not complain, unless the language in the *Butte Canal Ditch Co.* v. *Vaughn* was intended to modify the proposition in the *Bear River Co.* v. *York Mining Co.*—and if so, then the plaintiffs had the right to insist that the water flowing to them should not be so impaired in quality as to defeat the purpose

of their appropriation. This was the extent of their rights, and no more. Subject to those rights, defendants might locate above them, and use the waters of Saw Mill Ravine as they might see proper. When such location and appropriation of the water had been made by defendants, their right to the use and enjoyment of the water was as proper as that of plaintiffs. The plaintiffs could no more turn the water away from the dam of defendants located in 1855, than the defendants could divert the water from the dam of the plaintiffs located in 1853.

" The defendants could impose no more conditions upon plaintiffs respecting the use of the water by plaintiffs at their dam of 1853 ; and after the location of defendants' dam in 1855, plaintiffs could impose no conditions upon defendants, as to the use of the water, other than those that existed in favor of plaintiffs prior to the appropriation of defendants. The same rule would follow as to each subsequent appropriation of the water of the ravine, and each subsequent locator takes the use of the water subject to the conditions imposed upon the use of the water by the appropriation made in 1855.

" But, ask the plaintiffs, can we not change our location, and tap the stream at a different point ? Certainly, this can be done, as decided in *Kidd* v. *Laird,* but with this proviso, that the change of location shall not injuriously affect the rights of others. When the defendants located their dam in 1855, and appropriated the water of the ravine at that point to the extent of the capacity of their ditch, they acquired the same right to the use of the water, as against subsequent locators above them, as the plaintiffs acquired by the location of its dam in 1853 ; that is, the defendants acquired the right to demand that the water from above should flow to them undiminished in quantity, uninterrupted in flow, and not so impaired in quality as to defeat the purpose of their appropriation. The plaintiffs would have no more right to infringe these conditions imposed upon the use of the water by defendants, by going above defendants and locating a new dam, than a stranger.

" The complaint alleges that one right of damages accrued to plaintiffs by the defendants' refusing to permit plaintiffs to tap the stream above the dam of defendants, and convey the water to some

Butte T. M. Company *v.* Morgan.

mining locality where it might have been sold.   This would have diverted it entirely from defendants' dam and ditch, and would have been in violation of defendants' rights.   The Court is of opinion that plaintiffs cannot claim damages for being prevented from doing an unlawful act, and one which, if done, would have subjected the plaintiffs to an action for damages.

"As to the claim of damages for diverting the water from the dam and ditch of plaintiffs, located in 1858 to convey water to their tunnel claim, no water was in fact diverted from this dam, but the gravel and sediment that flowed down Saw Mill ravine from the mining claims of defendants, and the gravel and sediment which flowed down from Campbell's ravine into Saw Mill ravine from the claims of Gregory & Co., did fill the dam and trough of plaintiffs, so that the water could not flow through it to the tunnel claim.

" The mining claims of defendants upon the bank of the stream and the mining claims of those to whom defendants are selling water, were all taken up and worked before the plaintiffs located the dam to divert the water to the tunnel claim.   The debris of defendants and other claims above flow naturally and of absolute necessity down the channel of the ravine to the new dam of plaintiffs.   The plaintiffs must accept this new location of 1858 as they found it, and subject to the prior rights of prior location ; and if plaintiffs have sustained an injury from the use of the prior right, which injury was an absolute necessity if the prior right were used at all, it is an injury for which plaintiffs cannot recover damages.

" The only prior right, as against defendants, shown by the plaintiffs, is the ditch located in 1853.   To this ditch the water has continued to run uninterrupted and undiminished, so far as the evidence shows.

" The conclusion of law is, that the injuries complained of are such as plaintiffs are not entitled to compensation for, in damages, and that plaintiffs should take nothing by this action."

Judgment for defendants, plaintiffs appeal.

*Wm. H. Rhodes,* for Appellants.

I.   Plaintiffs are entitled to recover, no matter what the law may be with respect to the right of a miner to move the point of tapping

a stream above the original dam. The complaint avers and the Court finds that defendants ousted plaintiffs from the point selected, possessed and appropriated by them to erect a reservoir on Saw Mill ravine, and also took possession of the point themselves and erected a dam and reservoir. If plaintiffs had no right to go above their old ditch of 1853, defendants, who were subsequent locators, had no right to go above theirs, dating in 1855.

II.   Plaintiffs are further entitled to recover, irrespective of the main question, on the grounds that defendants obstructed the flow of the water down the ravine during the night time ; and deteriorated its quality during the day.

1. There is no law limiting a miner to work during the day time. Plaintiffs were engaged in a mining operation in which they had expended over $20,000, and were prosecuting the work by night as well as by day. Defendants oust them from a spot they had selected and possessed ; erect a reservoir, as the Court says, " to collect the water during the night for use during the day farther down the ravine."

2. The water was so choked by filth and deteriorated in quality that plaintiffs' tunnel ditch would not flow. (*Hill* v. *King*, 8 Cal. 336 ; *Butte Canal & Ditch Co.* v. *Vaughan*, 11 Id. 153.)

III.   Under the Mining Laws of this State, he who first appropriates the waters of a running stream for mining purposes, enjoys the right of changing the point of appropriation, either up or down the stream, at pleasure ; and subject to no restriction or impediment, except the rights of others ; and these rights do not depend on the point where the stream is tapped, but solely on the date of appropriation—priority being the gist of every controversy that can arise relating to the right of usufruct in the waters of a running stream. (*Ortman* v. *Dixon*, 13 Cal. 34 ; *Butte Canal & Ditch Co.* v. *Vaughan*, 11 Id. 143 ; *McDonald* v. *Bear River and Auburn Water Co.* 15 Id. 145 ; *Weaver* v. *Eureka Lake Co.* Id. 271 ; *Weaver* v. *Conger*, 6 Id. 558 ; *Jones* v. *Jackson*, 9 Id. 244 ; *Irwin* v. *Phillips*, 5 Id. 140, and authorities there cited by respondents ; *Tartar* v. *Spring Creek Co.* 5 Id. 375.)

*H. O. & W. H. Beatty,* for Respondents.

Butte T. M. Company *v.* Morgan.

I. Plaintiffs maintain that their appropriation of the entire water of the stream in 1853 or 1854 gives them the right to use all its water in any way, at any time and at any place, notwithstanding any intervening appropriation by others ; that is, if a stream issuing from a mountain lake has a volume of water sufficient to turn one good mill with a moderate fall, has a course of ten miles to its mouth, and within each mile has sufficient fall for a mill, and A builds a mill at the lowest fall near its mouth, whilst the balance of the stream is unappropriated ; subsequently, B, C and others build mills on each mile of its course, commencing one mile above A, and extending up the stream to its source in the lake ; after nine mills have been built above A—not in the slightest degree diminishing his supply of water—he has the right to go to the head of the stream, divert all its water, and leave the mills on the stream dry, simply because he first appropriated the water at its mouth. Such a proposition is absurd, and yet it is the result of plaintiffs' position. Plaintiffs first appropriated all the water of Saw Mill ravine. Until others made appropriations, of course they could change as often as they pleased. Even after others had made subordinate appropriations, they could change as often as they pleased, subject to the restriction, that the change must not be to the prejudice of the rights of others.

II. In considering plaintiffs' second point, the rights acquired by them in 1853-4 and those acquired in the Fall of 1858 must not be confounded. They located their lower dam in 1853, and commenced using it in January, 1854. In 1855, defendants' vendors located their dam about six hundred yards above plaintiffs' dam. In the Fall of 1858, plaintiffs located another dam, for other purposes, between their lower dam and the dam of defendants. The rights of the two parties under these respective locations are clearly expressed by the Court below : " The location in 1855 was subject to the conditions imposed upon the use of the water by the appropriation of 1853, and the location of 1858 was equally subject to the conditions imposed upon the use of the water by the appropriation made in 1855."

III. As to the ouster complained of, any citizen who is injured by a private nuisance may abate it, if he can do so without a breach

of the peace. (2 Black. Com. 5, 6, and notes.) The improper diversion of water is a nuisance. (1 Id. 403, and notes; 2 Id. 218, and notes.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action for damages, and for the restitution of certain premises described in the complaint. The facts are clearly stated in the findings of the Court, and the conclusion arrived at is undoubtedly correct. The principal question is, whether a person appropriating and diverting the water of a stream at a given point, can afterwards change the point of diversion to the prejudice of a subsequent appropriator? The case of *Kidd* v. *Laird*, (15 Cal. 161) and the authorities there cited, are decisive of this question, and it would seem that the position of the appellants is based upon a misconception of the doctrine enunciated. They appear to regard the right to change the point of diversion as absolute and unqualified, whereas the rule is that the change must not injuriously affect the rights of others. This we expressly declared, and our views upon the subject have undergone no modification.

One of the grievances of which the plaintiffs complain is, that they were ejected from the possession of certain ground occupied by them for the purpose of constructing a dam and ditch. The object was to divert the water away from the defendants, and we think the plaintiffs have no right to complain of the means adopted to defeat this object. As against the defendants, the diversion would have been illegal, and we regard their action in the premises as a proper and legitimate mode of averting the injurious consequences.

Judgment affirmed.