## ADELIA HILL *v.* J. M. SMITH.

FORM OF DENIAL IN ANSWER. — If an answer, in response to an allegation of the complaint, instead of denying it in express terms, contains the averment that the defendant did not commit the act charged, or that the fact alleged to exist does not exist, these averments of the answer traverse the matters alleged, and are good denials of the same.

PROOF OF MINING FOR GOLD.— Evidence that a party is at work on a claim, and is mining, and is at work with tools commonly used by miners, is sufficient to justify a jury in finding that he is mining for gold, without any proof that he has found any gold in the claim.

MINING ABOVE THE HEAD OF A DITCH. — Where a ditch has been excavated from the bed of a stream, and its water has been diverted through the same for mining purposes, a miner has no right to work a claim located above its head after the ditch is dug, in such manner as to mingle mud and sediment with the water, and injure its value to the ditch owner for mining purposes, or to fill up the ditch and reservoirs with the same so as to lessen their capacity and increase the expense of cleaning them out.

SAME.—The fact that a miner, working a claim above the head of a ditch, conducts his mining operations in such a manner as to cause the least possible injury to the ditch and water flowing in the same, does not excuse his responsibility for injuries caused by working the same. It matters not how cautiously or carefully the miner works, for if the ditch owner is in fact injured, the miner is none the less liable.

USE OF WATER FOR MINING. — As between ditch owners and miners using the waters of a stream in the mineral region for mining purposes, the law does not tolerate any injury by one to the prior rights of the other.

COMMON LAW. — The *reasons* which constitute the groundwork of the rules of the common law touching water rights have not lost their governing force in the mineral regions of this State. The conditions to which we are called upon to apply those rules are changed rather than the rules themselves.

PRIOR AND SUBSEQUENT APPROPRIATORS OF WATER.—In controversies in the mining regions between the prior and subsequent appropriators of water, the question to be determined is, has the use and enjoyment of the water, *for the purposes for which the first appropriator claims it*, been impaired by the acts of the subsequent claimant?

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

This action was commenced May 26th, 1863. The complaint averred the excavation of a ditch for the conveyance of water for mining purposes from Indian Cañon to Iowa Hill, by plaintiff's grantor, in 1852, and the continuous use of the water of the cañon in the ditch from that time up to the commencement of the suit; and that at the time the ditch was dug the water flowed down in a clear state, without any mixture of

mud or sediment, and so remained until the acts of defendant complained of; and that the water, when in a clear condition, was more valuable and profitable to plaintiff for sale for mining purposes than when mixed with mud and sediment. That the defendant had been engaged for four weeks in digging up the bed of the cañon at points from six hundred to one thousand feet above the head of the ditch, and washing down the earth with the water into the ditch, thereby mixing the earth, mud, and sediment with the water, so that the same settled in the bottom of the ditch and reservoirs, and lessened their capacity and increased the expense of cleaning the same. That the miners who purchased the water from plaintiff, used the same through hose, and that when it was loaded with mud it destroyed their hose, etc., and that plaintiff's sales of water had been injured thereby.

The complaint prayed for judgment for damages, and for an injunction.

The answer did not deny in express language the allegations of the complaint, but in answer thereto stated that the waters of Indian Cañon had not flowed down in a clear state, and that defendant had not washed any earth into plaintiff's ditch, etc.

The defendant, on the trial, proved that he had located a claim above the head of the ditch a short time before the suit was commenced, and was engaged in working the same, but introduced no evidence to show that he had found any gold there. The evidence showed that the bed of the cañon above the head of the ditch was about one hundred feet in width, and that the earth was from three to four feet in depth, and that the defendant used the water of the cañon to work his claim, and that after the water left the claim it flowed into the ditch.

The Court gave the following instructions to the jury, to which plaintiff excepted.

" It is very difficult to state with exactness the rights of a ditch owner as against miners who subsequently locate claims on the same stream above the head of the ditch.

Our Courts have endeavored to adopt those rules in relation to the subject which will allow, as far as possible, both these classes of location upon the public domain to enjoy their property. Of course, if the first locator of a water ditch upon a clear stream was held to be entitled to the continuous use of the water in a pure state, then large regions of rich mining country would be kept from settlement and development. On the other hand, if miners were allowed to locate claims immediately above the heads of ditches, and to mine there to the same extent and with the same rights as elsewhere, then large ditches, costing thousands of dollars, would be unjustly at the mercy of every adventurer.

" The rule in such cases, so far as any can be definitely stated, is this : The subsequent locators of mining claims on a stream above a ditch, which diverts water for sale to miners, have no right to work their claims, or run their tailings in such a manner as either to entirely obstruct the flow of water into the ditch, or to obstruct it to any considerable extent, or to diminish the quantity of water belonging to the ditch, or to so deteriorate the quality of the water as to render it unfit for mining purposes, or to so fill up the ditch with sediment as to materially lessen its value ; but the mere fact *that their mining operations muddy the water, rendering it less valuable, though not unfit for mining* purposes, or deposit sediment in the ditch to only such an extent as may be easily removed, without great cost, does not render them liable in an action like the one at bar.

" If, therefore, in this case you believe from the evidence that defendant is the *bona fide* owner of mining claims on the stream above the head of plaintiff's ditch, that he worked his claims in a reasonable manner, using all due precaution to prevent injury to the ditch ; that the effect of his mining was only to muddy the water, but not to diminish its quantity, or to materially injure the ditch or the water, then defendant is not liable.. But if you believe defendant's mining operations seriously obstructed the flow of water into plaintiff's ditch, or diminished the quantity of water flowing

into it, or in any manner materially injured the ditch or the water, then you should find for plaintiff, giving her nominal damages, of course, and such actual damages not exceeding three hundred dollars, as you believe from the evidence she sustained."

The defendant recovered judgment, and the plaintiff appealed from an order denying a new trial and from the judgment.

The other facts are stated in the opinion of the Court.

*Tuttle & Fellows,* for Appellant.

*Jo Hamilton,* for Respondent.

By the Court, SANDERSON, C. J.

The objection to the form in which many of the allegations contained in the complaint are denied is not a substantial one, in our judgment. Any form of denial which fairly meets and traverses the allegation is admissible. Suppose it is alleged in a complaint that the defendant at a certain time made and delivered to the plaintiff his certain promissory note, etc. Is not this allegation as directly and fairly traversed by saying: "I did not at the time specified, or at any other time, make or deliver to the plaintiff the note described in the complaint," as by saying: "I deny that on the day specified, or at any other time, I made or delivered to the plaintiff the note described in the complaint?" We think both serve equally well to form the issue. The former mode (which is the one adopted in this case) is less usual than the latter, but we are unable to perceive why it is not equally as good. It matters but little which form is adopted. If the denial is not evasive, but directly traverses the matter alleged, it is good, without regard to the mere form in which it is expressed. The denials in this case do not appear to be evasive, but on the contrary, we think they fairly meet the issues tendered by the complaint.

We are also of the opinion that there is nothing in the point made by counsel for appellant to the effect that the matter set out in the answer by way of excuse or justification is unsupported by the evidence. Assuming that the jury must have determined at the threshold of their investigations that the digging by the defendant of which the plaintiff complained was done by him in good faith, in pursuit of gold, we think the evidence upon that point, in the absence of any counter testimony, was sufficient to sustain their finding. All the witnesses, including the plaintiff's, speak of the defendant's " claim," and of his labor as " mining." They also speak of his " sluice-boxes," " wing-dam," mode of " working claim " and " depositing tailings," all of which are familiar terms in the vocabulary of the miner, and would hardly have been employed by the witnesses had not the defendant been engaged in mining. From these circumstances, and in the absence of all counter testimony, the jury were justified in finding that the defendant was engaged in mining for gold. If they erred at all, it was not in so finding the fact, but in attaching to it, when found, too much importance, and regarding it as a justification on the part of the defendant, as they seem to have done, for whatever injuries he may have caused the plaintiff by his mining operations. And this brings us to the principal and most difficult question involved in this case.

After a careful examination of the evidence, we are impressed with the conviction that the plaintiff ought to have recovered. And we can only account for the verdict upon the hypothesis that the jury misapprehended the law of the case. The plaintiff's prior right is unquestioned. That the defendant's work caused large quantities of rubbish and sediment to be deposited in plaintiff's reservoir and ditches, thereby lessening their capacity and entailing upon her additional expense in cleaning them out and maintaining their original capacity, hardly admits of debate. And it is very clear from the evidence that the value of the water for mining purposes, by reason of the mud and sediment mixed with it by the defendant's mining operations was diminished by from one

fourth to one half.  It appears that the plaintiff's ditch sup-
plied water to hydraulic claims which require water, as was
clearly shown, in a purer state than claims worked by the
sluicing process or method, in order to work them success-
fully.  Where she had previously sold only sixty inches of
water she was compelled to sell a hundred and a hundred and
twenty at the same price in consequence of the deterioration
of its solvent capacity by reason of the sediment and mud
from defendant's claim.  It further appears that on one or two
occasions the miners, or some of them, who purchased water
from the plaintiff, quit work entirely, because the water was
so thick with sediment that it could not be used with any
reasonable success in hydraulic mining.  To say that such
injuries are immaterial and therefore constitute no cause of
action is to trifle with the prior rights of the plaintiff and
misrepresent the law.  There seems to have been a succes-
ful effort made on the part of the defense to prove that
the defendant had studiously conducted his mining operations
in such a manner as to cause the least possible injury to the
water rights of the plaintiff.  It is probable that the jury
supposed that, having thus worked, the defendant was not
responsible for injuries unavoidably resulting from his work
upon the vague notion that everybody has a right to mine at
such points as he may choose, provided he causes as little
injury to others as is possible under all the circumstances.
Such is the only theory upon which we can account for the
verdict.  Some stress was placed upon this testimony by the
Judge, and while we think it was not intentional, the gen-
eral and abstract terms in which the instructions of the Court
were couched were, to a certain extent, as it appears to
us, calculated to convey to the jury the idea that such was
the law of the case.  How cautiously or carefully the defend-
ant worked was a matter of no consequence, for if his work
in fact injured the plaintiff, he was none the less liable to an
action.  Moreover, the entire charge impliedly if not expressly
proceeds upon and sanctions the idea that as between ditch
owners and miners using the water of a stream in the mineral

61

regions of the State for mining purposes, the law tolerates and winks at some uncertain and indeterminate amount of injury by the one to the prior rights of the other. This is due in a great measure doubtless to the notion, which has become quite prevalent, that the rules of the common law touching water rights have been materially modified in this State upon the theory that they were inapplicable to the conditions found to exist here, and therefore inadequate to a just and fair determination of controversies touching such rights. This notion is without any substantial foundation. The reasons which constitute the groundwork of the common law upon this subject remain undisturbed. The conditions to which we are called upon to apply them are changed, and not the rules themselves. The maxim, *sic utere tuo ut alienum, non lædas,* upon which they are grounded, has lost none of its governing force; on the contrary it remains now, and in the mining regions of this State, as operative a test of the lawful use of water as at any time in the past, or in any other country. When the law declares that a riparian proprietor is entitled to have the water of a stream flow in its natural channel—*ubi currere solebat*—without diminution or alteration, it does so because its flow imparts fertility to his land, and because water in its pure state is indispensable for domestic uses. But this rule is not applicable to miners and ditch owners, simply because the conditions upon which it is founded do not exist in their case. They seek the water for a particular purpose, which is not only compatible with its diversion from its natural channel, but more frequently necessitates such diversion, and moreover does not require the water in a pure state in order to insure its reasonable and beneficial use. Yet the maxim above mentioned upon which the rule is founded is equally as applicable to the ditch owner and to the miner as to the riparian proprietor, and neither can so use the water as to injure or prejudice the prior rights to a like use by the other. This maxim is one which every riparian proprietor is bound to respect, and it is no less obligatory upon those who use and divert water for mining purposes. So that in all con-

troversies like the present the question to be determined after all is the same as that presented by a like controversy between riparian proprietors, to wit: has the plaintiff's use and enjoyment of the water *for the purposes for which he claims its use* been impaired by the acts of the defendant? This is purely a question of fact for the jury, and all the law applicable to it is found, as stated by the learned counsel for appellants in the case of the *Phœnix Water Company* v. *Fletcher*, 23 Cal. 483, embraced in the three following maxims: *Qui prior est in tempore, potior est in jure; Ubi jus, ibi remedium; Sic utere tuo ut alienum non lædas*, and beyond these principles they do not require to be instructed. What diminution in quantity or what deterioration in quality will injuriously affect the use of the water by the plaintiff may be safely left to the determination of the jury, guided only by the foregoing maxims. It may be that a slight diminution or deterioration will impair his use of the water, and it may be that such use would not be impaired by a very considerable reduction in quantity or quality. The question must be determined *in view of the use to which the water is applied* and the other circumstances developed by the testimony.

Judgment reversed and new trial ordered.