[No. 390.  July 24, 1891.]

PETER TRAMBLEY AND ERNESTINE TRAM-BLEY, APPELLEES, v. GEORGE LUTERMAN, APPELLANT.

WATER RIGHT—PRESCRIPTION—EASEMENT.—The adverse, continuous, uninterrupted use, for a period of twenty-one years, for milling pur-poses, of the water of an artificial ditch or acequia, supplied from a nonnavigable stream, with the knowledge and acquiescence of the owners of the adjoining land over which the water flowed, is suffi-cient to establish an easement, in the absence of any evidence of permission or license; and a subsequent purchaser of and locator on such land takes subject to such easement, having only a qualified right to the use of so much of the water as will not deprive the prior proprietor and locator of sufficient to operate his mill.

APPEAL, from a judgment for complainants, from the Fourth Judicial District Court, San Miguel County. Judgment affirmed.

The facts are stated in the opinion of the court.

J. D. O'BRYAN for appellant.

LEE & FORT for appellees.

O'BRIEN, C. J.—This suit was brought by Peter and Ernestine Trambley for the purpose of restraining appellant, the defendant in the court below, from diverting the waters out of the artificial race or ditch

of appellees situate on the Gallinas river, near Las Vegas, in San Miguel county, to a wool and pelt cleaning establishment of the defendant, thereby depriving complainants of enough of water with which to operate their mill. It appears from the record that in 1849, Rafael Garcia erected a grist mill on the Gallinas river at the town of Las Vegas, San Miguel county. The machinery of the mill was propelled by water taken from an artificial ditch or acequia supplied from the river. In 1859, becoming the owner of this property, he erected a new mill thereon, and continued to own and operate the same till October, 1864, when he sold it to Juan Francisco Pinard, who used it until May, 1867, when he conveyed it to complainants, who thereupon went into possession and used the same without interference until the summer of 1886, when defendant, Luterman, erected a wool and pelt cleaning establishment; that plaintiffs, on account of such diversion of the water from the ditch, are deprived of a supply sufficient to operate their mill; and commenced this suit for relief, praying in their bill that the defendant be restrained from diverting, taking out, or interfering with the water in the ditch or acequia. Defendant's answer to the bill sets up various grounds of defense. The principal ones relied upon, deemed necessary to be considered in determining the case are: (1) That complainant's have shown no exclusive right to the use of the water from the acequia, either by grant or prescription; (2) if such right ever existed, it was lost by failure of complainants, and of those through whom they claim, to comply with the conditions expressly imposed, or by repeated changes made by complainants as to the manner of appropriating the water; (3) that complainants have no right thereto by use or adverse possession; and (4) that complainants are estopped by their "words, acts, and silence," from denying the defendant's right to appropriate enough

of the water from the acequia to operate his wool cleans-
ing establishment.    The action was tried before a
master, who filed substantially the following
findings of fact:  "(1) That, prior to the
year 1846, the owners of the land on the east
side of the Gallinas river, opposite the town of Las
Vegas, had constructed an irrigating ditch, the head
of the ditch being north of the town, and the supply
of water taken from the river; that, after the construc-
tion of the ditch, one Rafael Garcia, who owned the
land under the ditch, applied to his co-owners of the
land along the ditch for the privilege of using the
water, not necessary for irrigation, flowing in the
ditch, to drive a flour mill he was about to erect, and
that, in accordance with such application, a number of
the owners of land along the ditch, and claiming to rep-
resent all the owners of the land, gave to Garcia an
instrument in writing, of which the following is a
translation:

" 'In this place of Las Vegas, the twelfth day of the
month of May, of the year 1846, before me, citizen Man-
uel Duran, justice of the peace of this district, appeared
in their own proper persons citizens Jose Gonzales,
Juan Jose Martin, Guadalupe Baca, invited also by the
citizen Rafael Garcia, whom I certify to know, and the
first named say for themselves and in the name of
other persons, owners of the acequia which waters the
tillable land on the other side; and whereas, Garcia
has solicited permission to erect a mill on said acequia,
obligating himself to maintain the dam and trench in
good order, and furnish to peones for cleaning the
same; only conceding the good will and consent of all
the others who are concerned in the before mentioned
acequia, with the condition that the announced mill
does not interfere with the irrigation of the land, and
grind, only when it does not impede irrigation by any-
body; and in order that Garcia may remain secure

VOL. 6 N. M.—2

*WATER right: prescription: easement.*

and as provided for his mill he solicited their free consent, and giving herewith Garcia power that if, at any time hereafter, any person should make any infringement that they should be debarred, by this deed, to do so; that now or hereafter, in this place above or below, another mill nor any other manufactory should be placed; and, if placed, it should not be permitted; it being the will of the undersigned that said Garcia shall enjoy alone the benefit and grace of the will of the undersigned, having solicited me, the said justice, to execute these presents, and to authorize the same with the power which is conferred upon me by right and by law. Signing with the undersigned and those of my assistants, which I hereby do on account of not having a clerk, and none being in this department, on common paper, on this, the twelfth day of May, 1846.

(Signed)      " 'MANUEL DURAN.

" 'JOSE GONZALES.

" 'JUAN JOSE MARTIN.

" 'JOSE GUADALUPE BACA.

" 'Assistants:   JESUS GALLEGOS, and

         " 'ANTONIO MA. GONZALES.

" 'Recorded book 1, pages 195 and 196, Records of San Miguel county.'

"(2) That Garcia sometime between the years 1846 and 1848 built a small Mexican mill on the ditch or acequia, and used the waters therefrom for the purpose of running his mill, subject, however, to the right of the adjoining occupants to appropriate water therefrom for domestic and irrigating purposes. That Garcia died in the year 1855, leaving as his only heir Agapito Garcia, who shortly afterward, about the year 1856, sold the mill and the land whereon it stood to Merritt and Kihlberg, from whom, through several mesne conveyances, the property came into the hands of complainants on the tenth day of May, 1867. That the original mill built by Rafael Garcia was run contin-

uously by the water from the ditch up to the year 1860, when it was rebuilt to its present size by Miguel Desmarais, the owner at that time. That the mill, as rebuilt, has been continuously run by water taken from the ditch to the present time, except for a short period, when steam power was introduced to help out the water power. (3) That complainants have been the owners of the mill and land whereon situated for the past twenty years, and have operated the mill during that time, repairing the dam in connection with the other owners of the land along the ditch, keeping the ditch in repair, and having the use of all the surplus water of the ditch during that period, not used for irrigation or domestic purposes by the other owners of the land. That complainants derived their paper title to the land and appurtenances through six successive and regular deeds of conveyance, all duly recorded, beginning with one dated May 13, 1856, from Garcia and wife to Merritt and Kihlberg, and ending with one bearing date May 10, 1867, from Juan Francisco Pinard to complainants, Peter Trambley and Ernestine, his wife. (4) That when the mill is running the water appropriated from the acequia to operate the same, after passing over the mill wheel, returns by a sluiceway to the river below the mill. (5) That on the ――― day of ―――, 1886, the defendant, George Luterman, bought a piece of land situate between the ditch which supplies complainants' mill and the Gallinas river, and five or six hundred yards above the mill, for the purpose of erecting a 'wool pulling and cleaning establishment;' that defendant had inquired of complainants before buying as to where he could find a convenient location for such an establishment, and that complainants had directed him to the place now occupied by defendant, and they had also inquired of them how much water he would use, and he informed complainants that he would use six inches square of water, to which information

plaintiffs made no response. (6) That defendant
erected a building, involving considerable expense and
outlay, by the end of June, 1886, at which time he
constructed a flume from the ditch which supplies the
mill, but on his own land, and diverted from that ditch,
by means of boards placed across it, sufficient water
for his use, which water is let into the flume through
an aperture nine inches wide and three inches high;
and that the defendant has since used from the ditch
the quantity of water passing through the aperture or
flood gate two or three days each week, during the
months from December until March, starting his cleans-
ing or washing operations from 10:30 A. M., and con-
tinuing until 4:30 P. M., or even later. (7) That
defendant, during the time that he has conducted such
establishment, assisted plaintiffs at their written request
in rebuilding the dam in the river where the ditch
receives its supply of water, as well as in repairing the
ditch; that defendant has title to the land which he
occupies under divers deeds of conveyance duly recorded
running from May 24, 1882, to April 24, 1886, when
one Ben Bruhn, the last grantee, conveyed the prem-
ises to the defendant; and that, in addition thereto, the
latter obtained from several owners of the land along
the acequia the following agreement or license for the
use of the water: 'Know all men by these presents,
that we, the owners of land along the acequia in East
Las Vegas, in consideration that George Luteman has
erected a wool cleaning establishment on his land also
fronting on said acequia, and that he will continue the
said establishment, do hereby give our consent that he
may use the water from said acequia at such times as we
do not require the same, for the purposes of his estab-
lishment; but this permission on our part shall never
be construed into a right in the said George Luteman to
the use of the said water against our wishes, and for
any longer time than it is our pleasure to permit the

same.   Witness our hands, etc., this first day of April,
A. D. 1887.                      LORENZO LOPEZ,
                          " 'ANICETO BACA,
                          " 'S. P. CLEMENTS,
                          " 'B. PAPAN.'
   "(8) That the defendant's establishment is built some
distance from the acequia towards the river, and the
water he uses passes out of his establishment after
the use, and wastes into the river.   That during the
time of low water in the river, and during the hours
that defendant is using the water for his establishment,
the plaintiffs suffer loss from the use of the water by
the defendant for his establishment, a loss which is
measured by about one fourth of the capacity of the
mill for grinding.   This loss, however, does not occur
during the rainy season, or at such other times when
there is plenty of water in the river.   From which find-
ings the master drew the following conclusions of law:
'(1)  That the original writing given by the landowners
to Rafael Garcia, the proprietor of the mill first built,
if not a grant in terms to him of an easement in the
water of the ditch, to use for driving his flour mill,
against all persons, except for irrigation and domestic
purposes, was at least an executed license after the
erection of the mill, and by the long use of the water
by Garcia and his assignees and privies in estate
became irrevocable, and an easement appurtenant to
the mill.   The erection of a new mill by Desmarais in
the place of the old one built by Garcia on the same
land, and the use of the water in the same ditch, in the
same way and for the same purpose, would not destroy
this right; but the twenty-six years' use by plaintiffs
and their immediate grantors, Pinard and Desmarais,
would only strengthen it, and of itself be sufficient to
create such an easement in plaintiffs.   (2) I conclude,
in regard to the question of estoppel, that the construc-
tion of the wool washing establishment on defendant's

own land, in sight of plaintiffs, and a general knowledge of the purpose for which the building was being constructed by the defendant, without active opposition from plaintiffs, would hardly work an estoppel against plaintiffs, at least unless it appeared that plaintiffs knew especially how the water was to be used and disposed of after use by the defendant, and the manner in which it might affect their water power, and acquiesce in it. (3) That the diversion of the water from the said ditch by the defendant, to the damage of plaintiffs, and allowing the water to waste into the river, for any other purpose than the ordinary irrigation of his land and domestic purposes, is such an infringement of plaintiffs' rights as to entitle them to a restraining order of the court, enjoining defendant from using the water during the seasons of low water in the river for washing wool or other manufacturing purposes, unless the water so used is returned to the ditch above plaintiffs' mill, and without serious diminution in quantity." Counsel for appellant presented objections and exceptions to the report, all of which were overruled. The court thereupon confirmed the report, and entered a decree in favor of complainants in substantial conformity with the master's decision, from which the defendant has taken this appeal.

The substance of the errors relied upon by appellant to secure a reversal may be briefly stated as follows: The court below erred in overruling defendant's exceptions to the findings and decision of the master, and in entering judgment in accordance with the master's report, (1) because the deed from Agapito Garcia does not convey any right to the use of the water in the acequia, nor do any of the subsequent deeds do so until 1864, when Desmarais conveyed to Pinard; (2) that it was error to find, if there had been no easement, that there was an executed license; (3) in failing to find that on the removal of the little Mexican mill in 1860,

and the substitution of a distillery therefor the license,
if any, expired, and did not revive in favor of Desma-
rais when he built the new mill; (4) in failing to find
that Martin, who executed the license to Garcia in 1846,
had previous to 1838 sold the property, of which the
land of the defendant is a part, to one Romero, and
that at the time the Garcia license was granted the
present mill site of the defendant belonged to the
Romero heirs.    The other assignments are of a similar
nature, all charging error in failing to find such facts
as in appellant's opinion tended to show that com-
plainants had no exclusive right to appropriate the
waters from the ditch for the use of their mill.    Upon
a careful examination of all the testimony in the cause
we are unable to discover any errors prejudicial to
defendant's rights, either in the findings or in the
refusals to find.    They appear to us satisfactory and
complete, fully warranted by the evidence, and cover
all the issues involved in the pleadings.    That addi-
tional findings, at least in part, might have been made,
we concede, but they would be redundant, rather than
material, and could not change the result.    The ditch
or acequia in controversy was made in the year 1846,
before the acquisition of the territory by the United
States.    The rights of the parties to the use of the
waters therein then attached according to the laws,
customs, and usages in force in the republic of Mexico.
It is apparent that when defendant bought his mill site
in 1886 the Trambleys personally, and by their prede-
cessors through whom they claimed title and took pos-
session, had occupied and used the premises continu-
ously during forty years for substantially the same pur-
poses for which they were used when this suit was
commenced; hence, when defendant purchased he
knew or might have known of the existence of this
servitude upon the land which he bought.    His grant-
ors, the Romeros, were present, and were well aware

that complainants and their predecessors had enjoyed this easement unchallenged for almost double twenty years. No objection had been made; no license had ever been requested from the Romeros. This is sufficient to create an easement. "There need be no claim of right in words, or an admission by the owners of the land in words, that he knew of the adverse cause and claim of right. Twenty-one years of adverse use continually and uninterruptedly, with the knowledge and acquiescence of the owner of the land, in the absence of any evidence of permission or license, is sufficient proof of the existence of such easement." Blake v. Everett, 1 Allen, 348. When defendant in 1886 bought the premises on which he afterward erected his wool cleansing establishment, he bought the same subject to complainants' easement,—a burden upon his estate as valid and effectual as if evidenced by a recorded incumbrance in writing. Blake v. Everett, supra. In this view of the case it is not important that Juan Jose Martin did not in 1846 own the land now owned by the defendant. The reason is obvious. It is true at common law the right of every riparian proprietor to the use of the stream is an incident to the ownership of the lands bordering upon the stream, and arises ex jure naturæ. "The right exists whether defendants exercised it or not, and the riparian proprietor may begin to exercise it when he will. It does not depend upon occupancy, and is not limited by the prior occupation of others, not amounting to an adverse enjoyment by prescription; but the rights of the different proprietors being equal, and each being entitled to the use of the stream for any lawful purpose, it is wholly immaterial who was first in time." Gould Waters, sec. 286.

But, says BIGELOW, C. J., in Fuller v. Chicopee Manufacturing Co., 16 Gray, 43, 44: "To the extent to which the descent or fall of water in a stream is taken up and occupied by the erection of dams for the purpose

of carrying mills, the right of other owners on the same stream who have not improved their sites for the creation of water power, and driving of mills, is abridged and taken away.    In such case, prior occupancy gives prior title.    Although the right to the use of the water is inherent in, or appurtenant to, land, it is, nevertheless, in a certain sense, a right publici juris, and subject to the rule of law which regards the erection of a dam for the purposes of creating mill power a profitable, beneficial, and reasonable use of the stream, of which riparian proprietors on the same stream, who have not appropriated the force and fall of the water on their own land, can not complain.''·  ''The right thus to appropriate water exists without private ownership in the soil, as against all persons, but the government, or its grantees, possession of public land which has not been surveyed, or patented, gives rise to no riparian rights in the streams which flow through it.''    Gould Waters, section 230; Lake v. Tolles, 8 Nev. 285.    But common law, as to rights of riparian owners, is not in force in this territory, nor in California, Nevada, and other Pacific states.    Gould, supra, section 228; Acts N. M. July 20, 1851; Jan. 7, 1852; Kidd v. Laird, 15 Cal. 161; Butte T. M. Co. v. Morgan, 19 Cal. 609.    ''The reasons,'' says SANDERSON, C. J., ''which constitute the groundwork of the common law upon this subject remain undisturbed.    The conditions to which we are called to apply them are changed, and not the rules themselves.    The maxim, sic utere tuo ut alienum non laedas, upon which they are grounded, has lost none of its governing force; on the contrary, it remains now, and in the mining regions of this state, as operative a test of the lawful use of water as at any time in the past, or in any other country. When the law declares that a riparian proprietor is entitled to have the water of a stream flow in its natural channel, ubi currere solebat, without diminu-

tion or alteration, it does so because its flow imparts fertility to his land, and because water in its pure state is indispensable for domestic uses; but this rule is not applicable to miners and ditch owners, simply because the conditions upon which it is founded do not exist in their case. They seek the water for a particular purpose, which is not only compatible with its diversion from its natural channel, but more frequently necessitates such diversion, and moreover, does not require the water in a pure state in order to insure its reasonable and beneficial use. Yet the maxim above mentioned, upon which the rule is founded, is equally as applicable to the ditch owner and the miner as to the riparian proprietor, and neither can so use the water as to injure and prejudice the prior rights of a like use by the other." Hill v. Smith, 27 Cal. 476, 482. Besides, it is well recognized that even at common law the party who has used water for a special purpose, and in a particular manner, adversely and uninterruptedly for twenty-one years, may not be disturbed in such use by a subsequent locator. Williams v. Nelson, 23 Pick. 141; Stein v. Burden, 24 Ala. 130; Townsend v. McDonald, 12 N. Y. 38. The law of estoppel invoked by appellant is not applicable. Complainants do not deny to the defendant the qualified right to appropriate water from the ditch to enable him to carry on his business. They simply deny him the right to take it in such quantities as to deprive them of enough to operate their mill. They admit his right subordinate to their prior right. When they saw him, in 1886, build his establishment, and knew that he would require some of the water from the ditch for the use of the same, they did not know and were not informed that the defendant would require enough for his use to interfere with the successful running of their mill. They were not bound to object, and their failure to do so does not deprive them of their remedy. Lux v.

Higgin, 69 Cal. 266.   The other objections urged by appellant are equally untenable.   He insists, for instance, that, if the original license created an ease-ment, it has been lost by repeated changes.   But com-plainants do not ground their right to the use of enough of the water from the ditch to carry on their mill upon the so-called license to Garcia, but upon title acquired by long continued adverse use.   "And when water has been lawfully appropriated the priority thereby required is not lost by changing the use to which it was applied. If the original appropriation was for a sawmill, the water may be used for a gristmill subsequently erected."   Maeris v. Bicknell, 7 Cal. 261; Hill v. Smith, 27 Cal. 476; McDonald v. Bear River Co., 13 Cal. 220.   We have carefully examined the other points contained in the brief of the learned counsel for appel-lant, but fail to notice any not sufficiently answered in what we have already said.   Finding no material error in the record, the judgment appealed from will be affirmed.

SEEDS and McFIE, JJ., concur.

LEE, J., having been of counsel in the case in the court below, took no part in this case in this court.