JUAN RAFAEL BERRÍOS, ETC., Plaintiff and Appellant, *v.* GUILLERMO GARÁU, Defendant and Appellee.

No. 5964.   Argued December 21, 1933.—Decided May 31, 1934.

*Martínez Nadal & Martínez Rivera* for appellant. *C. Domínguez Rubio* and *Luis F. Camacho* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Juan Rafael Berríos, a minor represented by his father, Juan Berríos Ortiz, brought, in the District Court of Guayama, an action against Guillermo Garáu to recover $20,000 as damages suffered through the loss of three fingers on the left hand, in an accident that—

"Was due exclusively to the fault, carelessness, and negligence of the defendant, Guillermo Garáu, his agents, employees, or subalterns, said negligence consisting, among other things, in the following:

"(a) In that knowing, as the defendant knew, that the machinery he used in his said bakery was dangerous to the children who, he himself knew, were accustomed to enter said premises and whom he himself allowed to be near said premises, he failed to take the necessary precautions to keep said machinery isolated or otherwise protected in some way so as to prevent children under ten years of age, like the plaintiff herein, from going near it and possibly being injured, as was the plaintiff minor, through curiosity or through the attraction that such machinery has for children, as it had for the plaintiff minor in the instant case.

"(b) Because said defendant, Guillermo Garáu, leased to the father of the plaintiff minor a house contiguous to his said bakery, the patio of which communicated with that of said bakery and had no fence, palings, or barrier, nor any other instrumentality to separate the patio of the said house leased to the father of the plaintiff minor from the patio of the said bakery; and said defendant knew that the plaintiff minor resided with his father in said house and

often visited said patio where he amused himself playing with other little boys of his own age, less than ten years old; and the door of said bakery, opening on the patio where the plaintiff minor amused himself by playing, was always open, and no person took care that children like the plaintiff did not enter said premises of the bakery, nor did any person prevent a minor, like the plaintiff herein, from going upon said place, attracted by curiosity towards the machine that ran by electricity and had cogwheels like those the said machine (*levadora*) then and there had.

(*c*) In that the defendant did not at any time warn anyone of the danger run by the children whom he himself saw and who he knew were playing in that place or unfenced patio which he himself had then and there, so near to said machinery in his said bakery; and he collected from the father of the plaintiff minor the sum of $8 a month, as rent on the house which he leased to him in said place, without said child being familiar with said machinery, which was dangerous *per se*, not only to children like the plaintiff but even to adults, and without having any person in charge of said machine or any contrivance to separate it from a place so accessible to anyone as that where the machine was, where children such as the plaintiff were likely to come so near it that it might cause them injuries similar to those which it then and there caused the plaintiff minor.''

The defendant answered. The case went to trial, considerable evidence was introduced, and the court rendered judgment against the plaintiff. The latter assigns four errors in his brief on appeal from that judgment.

The first error is formulated thus: ''The District Court of Guayama erred in denying the plaintiff's motion for a judgment in his favor on the pleadings.''

The complaint is verified, and the above-transcribed allegations were denied in the answer, thus:

''The defendant denies everything set forth in the fourth (duplicate) count of the complaint, not only in its preamble but also in paragraphs A, B, and C, including those conclusions contained in each one of said paragraphs A, B, and C.''

Based on that fact, the plaintiff moved the court to render judgment in his favor, relying on sections 110 and 113 of the Code of Civil Procedure and the cases of *Fernández* v. *Ruiz*

*Soler et al.,* 27 P.R.R. 74, *Santiago* v. *Cabán,* 23 P.R.R. 472, *Delanoy* v. *Blondet,* 22 P.R.R. 217, and *Horton et al.* v. *Robert,* 11 P.R.R. 168, all of which uphold the doctrine that where the complaint is verified, the denials contained in the answer must be specific, and if they are not and no new facts constituting a defense are alleged, the facts averred in the complaint shall be taken as true, and a judgment on the pleadings may be rendered on motion.

The defendant objected:

"1. Because the denial in the answer is sufficient;

"2. Because, even if it were not so, the special defenses set up by the defendant controvert the allegations of the complaint; and

"3. Because, even admitting that it was not so, the plaintiff has lost his rights (*a*) because he has failed to present a motion for a judgment on the pleadings, and (*b*) because he offered evidence tending to support those allegations which he now says were admitted."

The district court decided against the plaintiff the question raised; and correctly so, in our opinion.

In the first place, the motion came too late. In the case of *Ana María Sugar Co.* v. *Castro et al.,* 28 P.R.R. 225, 243, this court said:

" . . . The appellant also maintains that the court should have rendered judgment on the pleadings. In the first place we are of the opinion that a motion for judgment on the pleadings should be made before the case is called for trial for similar principles that are contained in *People* v. *Paris,* 25 P.R.R. 104. It is to be presumed that if the complainant goes to trial without raising a question of the sufficiency of the answer, either by such a motion or by a motion to strike, he is satisfied with the issues raised. In the interests of justice such a motion should not come as a surprise at the trial."

In the second place the defendant in his answer did not confine himself to the denial referred to. He set up twelve special defenses which we have examined, and we agree with the trial court that they constitute a sufficient denial of and

opposition to all the facts alleged in the complaint, the defect being thereby cured. In the case of *Fajardo* v. *American Railroad Company*, 27 P.R.R. 559, this court held:

"Although the defendant denied generally the second count of the first cause of action, yet, as it set up matter which is a complete denial of all the particulars contained therein, the allegations were thereby specifically denied, for the averments in an answer contrary to the allegations of the complaint are equivalent to a denial; therefore the lower court did not commit the error assigned. *Hill* v. *Smith*, 27 Cal. 476; *Pfister* v. *Wade*, 69 Cal. 133; *Perkins* v. *Brock*, 80 Cal. 320; *Burris* v. *People's Ditch Company*, 104 Cal. 248; *Stetson* v. *Briggs*, 114 Cal. 511."

There was no error. The second, third, and fourth assignments may be considered jointly. By the second it is maintained that the court erred in deciding that the doctrine of attractive danger is not applicable to the facts in the instant case; by the third, that it also erred in deciding that the accident was not due to the fault, carelessness, or negligence of the defendant; and by the fourth, that the court erred in rendering judgment for the defendant.

In its statement of the case and opinion the trial court held as proven the following facts:

"That the defendant, Guillermo Garáu, operates under a lease a bakery establishment which is situated on Fidelidad Street, Guayama, and is devoted to the making of bread for sale.

"That there are in said bakery a roller (*trono*), a kneader (*amasadora*), and an electric motor to run said machines, which are unprotected.

"That the patio of said bakery also serves as patio for two houses contiguous to said establishment, one of which is the house where Juan Berríos, the plaintiff, lives with his son, the injured party.

"That on November 3, 1926, between seven and eight o'clock in the morning, the minor, Juan Rafael Berríos y Sierra, legitimate son of the plaintiff, was in his house taking coffee, and when the servant who was waiting on him went to attend said child's mother who had recently been confined, the minor in question dashed out into the patio of the house and entered the bakery as far as the kneading machine which was running at that time, receiving an injury that

caused the loss of the three middle fingers of his left hand; that is,. the index finger, the thumb, and the ring finger, which were amputated half-way down.

"That the doorway of the bakery which leads to the patio has a: wooden door and also a wire-screen door which closes automatically,. as it is hung on pressure hinges.

"That from neither the front nor the back doors of the bakery in question can the machinery inside be seen, but the noise of the machinery when it is running can be heard.

"That it was the first time the injured child had gone into or entered the above-mentioned bakery.

"That on the date of the accident Juan Rafael Berríos was two years and eight months old, and is now, by reason of the said accident, deprived of the fingers we mentioned above.

"That the child in question was playing in the said patio that belonged also to his house.

"From the evidence introduced it does not appear whether any person saw the minor enter the bakery, so it cannot be determined just how the entrance door was at that time, all the witnesses testifying that the first they knew of the presence of the child in the bakery was when he screamed and they went to help him, and the unfortunate accident had already occurred."

We have examined the evidence adduced by both parties,. and with the exception of the finding contained in the last paragraph of the above-quoted extract, in regard to the impossibility of determining how the bakery's entrance door that gives on the patio was when the minor entered it, we fully agree with the trial court. As to- the said finding, we think that it was shown that the door must necessarily have been open when the plaintiff minor passed through.

The facts that we have transcribed having been declared proved, the trial court said:

"The plaintiff rests his case on the holding of our Supreme Court in the case of *Rivera* v. *Porto Rico Drug Co.*, 32 P.R.R. 470, 481, in which a study is made of the doctrine of attractive danger, which is the theory that serves as a basis for the complaint in the present action; and counsel for the defendant have submitted to us an able brief that contains a thorough study of the said legal doctrine and

of the interpretation given to it by the American courts, among them the National Supreme Court."

It went on to refer to the theory of attractive danger, citing authorities and, returning to the *Rivera* case, *supra,* maintained that it was not a case in point, because—

"In said case the child affected by the accident was constantly on the premises; he was used in the work of washing bottles, and he was given the leavings of the ice cream that was manufactured there; the other boys went to that place, also for the ice cream unfit for sale which was given to them, and in truth that place had become a place attractive to children, not because the machinery attracted them, but because there they found sweets that were given to them.

"In the case at bar the facts are different: the child had never entered the bakery in spite of his having placed on several occasions in the patio of the establishment, which was also the patio of his house; from the patio he could not see the machinery of the establishment in question, and only its noise could awaken his curiosity."

Then the question was asked:

"Could we admit in the instant case, given the manner in which the events occurred and taking into account the attitude of the child prior to the accident, that the machine in question was constituting and did constitute an attraction to the plaintiff minor?

The answer was:

"We think that it would be very risky to arrive at such conclusion. The evidence offered does not show that at any time prior to the accident the child manifested his curiosity to see the machine or find out what was going on inside of the bakery; he entered there, we do not know what for or why; no one saw him go in; we do not know how he found the entrance door or what he did when he found himself inside; and in our judgment, it would be outside of the law if we made the defendant liable for negligence under such circumstances.

"We all deeply regret the misfortune that happened to the plaintiff minor, an extremely unfortunate occurrence, but it seems to us that it occurred through a casual accident and that we should not make anyone responsible therefor, except chance, which so frequently

intervenes in our affairs and at times causes irreparable misfortunes for which no one can be held liable.''

The plaintiff failed to prove his allegation that notwithstanding the fact that the defendant knew how dangerous his machines were for children ''who he knew were accustomed to enter said premises and whom he himself allowed to be near said premises, he failed to take the necessary precautions to keep said machinery isolated.''

In spite of all his efforts, the plaintiff failed to prove that children entered the premises of the bakery where the machinery was, or that the machines' were placed in such way that they could be seen from the patio and by their operation arouse the curiosity of children. Only the noise caused by the running of the machines was heard in the patio.

The defendant showed that the machines were inside the building and that at the entrance giving on the patio there were two doors, one of them of the kind called *swinging doors:* that is, when the door is opened, it shuts by itself. The machinery was not protected, but it was not shown that it was so dangerous that outside protection was needed, the installation being in the usual form and that accepted by governmental authorities. It was not shown that the machinery was started while the plaintiff minor was there or while it could be reached by some other child. Under those circumstances, it may be held that the defendant did what ordinary prudence required to isolate his machines and prevent the possibility of their inviting into danger and harming persons not engaged in operating them.

We have been made to hesitate only by the fact that the bakery and the plaintiff's house had a common patio, and that the defendant had been the one who leased the plaintiff's house to the latter's father for a dwelling house; and by the circumstance that if the bakery door that gives on the patio had not remained open, the child could not have entered and

the accident would not have occurred, it being possible that the child was attracted to enter by the noise of the machinery in motion.

Do those circumstances place the case within the doctrine of attractive danger? We think not.

In the cited case of *Rivera* v. *Porto Rico Drug Co.*, 32 P.R.R. 470, a citation from White's Supplement, p. 170, was included, as follows:

"The better rule—and the one most strongly supported by authority—does not regard a child of tender years, lured upon the premises by reason of the existence thereon of something that appeals to his childish curiosity and instincts as a trespasser. The law regards the existence of such an object or condition as an implied invitation to the child to enter the premises. 'What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years.' Under this rule a person who maintains on his premises a dangerous instrumentality, though not in itself attractive, but placed so near an attractive situation on the premises as to form with it a dangerous condition, may be liable for injuries to a child resulting therefrom, notwithstanding the attractive situation is not in itself dangerous. Whether the premises in a given case are sufficiently attractive to entice a child into danger and suggest to the owner the probability of accident, are questions of fact for the determination of the jury."

There were also cited, among others, the following decisions:

"The owner of unprotected revolving cogwheels, located in an open space, 20 feet from a street, is liable for injury to a three-year-old child by the machinery, and the fact that the child was a trespasser does not matter. *Whirley* v. *Whiteman*, 1 Head, 610. The court said that, in playing about the cogwheels, the child was but indulging the natural instincts of a child.

" *       *       *       *       *       *       *

"A good cause of action for injury to a child was held stated in a declaration which alleged that the defendant operated an unguarded planning mill, situated in an open lot where children were allowed, with the knowledge and consent of the defendant, to congregate and play, the place being adjacent to certain streets and highways in the

midst of a thickly settled and populous district of a city, and supplied with dangerous machinery, including revolving interlocking cogwheels of such a character as to be attractive to children, and to appeal to their childish curiosity, to the defendant's knowledge, and which alleged that a nine-year old boy drawn to such dangerous machinery by childish curiosity, was injured thereby while exercising due care and caution for his own safety. *Jensen* v. *Whetherell*, 79 Ill. App. 33.

"In *Dublin Cotton Oil Co.* v. *Jarrard* (Tex. Civ. App.) 40 S. W. 531, a girl caught her foot in open conveying machinery in a cottonseed mill and was hurt. It was urged that if she was there merely with the consent and knowledge of the defendant, the only duty owed to her was to refrain from doing acts knowing the consequences of which would be injurious to her; and that if she was there not upon express or implied invitation, nor by permission or consent, then she was an intruder, and could recover nothing for injuries not wilfully and knowingly inflicted. But the court said that while this proposition might be urged against an adult with experience and judgment, it was not the law governing our duties to little children, who, like the bees and the butterflies, wandered everywhere and into every place left open, as their childish instincts and impulses led them. They were not trespassers or intruders within the meaning of the law until they were old enough and intelligent enough to know and appreciate the right of the proprietor to exclude them from his premises by a simple command. They understood that they were required to keep out only when they could not get in. They paused not to read the signs of warning or to inquire if they were welcome." 19 L.R.A. (N. S.) 1130.

Comparing the facts of the cited cases with those of the case at bar, we do not find that likeness or similarity that is necessary so that we may arrive at the same conclusion in the instant case as in those cases.

Here the machinery was concealed. It was not visited by children. Neither expressly or impliedly were children invited to come near. It seems more likely that the noise that went beyond the limits of the building and penetrated into the patio, instead of attracting, tended to repel children, especially those as young as the plaintiff was, and made them go away by making them afraid. And although we have said

that the evidence warrants us in concluding that the door was open, it has not been shown that it was left open intentionally or through gross negligence, and it must be presumed that it was due to something unforeseen that could not be avoided, since it was the constant rule that the door should remain closed, by official mandate of the health laws, for the purpose of keeping the tread clean.

In regard to the *Rivera* case, *supra,* the difference in essential points is evident. We know what was said by the trial court in that regard, and it seems advisable to transcribe what was set forth by the appellee at the end of his brief, thus:

"There, the child had been present. Not so here.

"There, he was accustomed to go. Not so here.

"There, reasons existed for thinking that he would go. Not so here.

"There, those in charge of the machine started it while the child was near. Not so here.

  *   *   *   *   *   *   *

"There, the relation between cause and effect was immediate and direct. Not so here."

Better than within the rule of the *Rivera* case, *supra,* the instant case falls within that established in *Pantoja* v. *American Railroad Company of Puerto Rico,* 45 P.R.R. 534, wherein, after the case of *Pannil* v. *Potomac F. & P. R. Co.,* reported in 4 L.R.A. (N. S.) 80, was cited, it was said:

"The mere fact that the victim of the accident was a minor does not preclude his being considered as a trespasser. Where a child is involved a greater care is required than in the case of an adult; the defendant must be held to a stricter accountability, and the lesser the development of the child's intelligence both with regard to the commission of the trespass and to his ability to guard himself from danger, must be taken into consideration; but even so we do not think that in the present case any liability attaches to the company. The child was 14 years old. He lived with his mother; and they both lived with the witness Castro, who testified that he had sent the minor to buy some cigarettes, the accident having taken place when he was returning with his purchase. Whether he was killed while

taking a short-cut across the railroad yard in order to get home sooner, or while grazing his goat and getting too near the car that ran over him, the truth is that he was in a place where he had no right to be, and that although his death was caused by an accident which may have been due to the negligence of the defendant in not keeping in perfect condition the switch of one of the sidetracks in its railroad yard, he was not seen by the operators of the locomotive and of the switch in time to prevent the accident.''

The judgment appealed from must be affirmed.

Mr. Justice Wolf concurs in the result.